United States Court of Appeals,

Fifth Circuit.

No. 93-4251.

Mansell W. BRANUM, Petitioner-Appellant,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.

April 5, 1994.

Appeal from a Decision of the United States Tax Court.

Before WISDOM, BARKSDALE, and EMILIO M. GARZA, Circuit Judges.

WISDOM, Circuit Judge:

*[C]hange our present tax system into a model of fairness, simplicity, efficiency and compassion....*

—*President Ronald Reagan*[1]

Appellant Mansel Branum believes that the decision in this case is a reflection of our failure to meet that challenge. Where he seeks an understanding and flexible Tax Code, ours offers him no solace. As we shall explain, his position deserves some sympathy. The applicable tax law, however, is unbending. Specifically, Branum seeks relief from the Tax Court's holding that he made an effective election under section 172(b)(3)(C) of the Internal Revenue Code for his 1985 tax year when evidence indicated that his intention was otherwise. That holding is legally unassailable and, as such, must be affirmed.

I.

The petitioner/appellant, Mansell W. Branum, timely filed his

---

[1]The President's Tax Proposals to the Congress for Fairness, Growth and Simplicity, at I (May 29, 1985).

1985 federal income tax return. For that year, he reported a net operating loss ("regular NOL") under section 172 and an alternative minimum tax net operating loss ("alternative minimum tax NOL") under section 55 of the Internal Revenue Code.[2] Specifically, he reported a regular NOL of $5,003,451 and an alternative minimum tax NOL of $4,943,544.

Branum attached the following statement to his 1985 return:

Taxpayer, in accordance with I.R.C. section 172(b)(3)(C) hereby elect [*sic* ] to carry foreward [*sic* ] all losses sustained in the calendar year 1985 and forego [*sic* ] carry back of such losses to prior years.

Branum asserts that he intended this statement to relinquish the carryback period for his regular NOL, but not for his alternative minimum tax NOL. In tax jargon, this is referred to as an attempted "split election".

In support of that construction, he points to his Form 1045 Application for a Tentative Refund, mailed separately on the same day, in which he requested a refund based on the carryback of his 1985 alternative minimum tax NOL to 1982. An income averaging statement attached to that form contained this handwritten directive in the margin:

Regular NOL not carried back per 172(b)(3)(C) election with 1985 return; AMT [alternative minimum tax] carried back only.

Branum cites this statement as evidence that the first statement—the one he attached to his main return—reflected his intent to make a split election.

_____

[2]References to the Tax Code are to the Internal Revenue Code of 1954 (26 U.S.C.) as amended up to 1985 (the tax year in question), unless otherwise indicated.

The Commissioner granted Branum's request for a "tentative" refund of $972,708, based upon the carryback of Branum's 1985 alternative minimum tax NOL to 1982. Later, after conducting an audit of Branum's return, the Commissioner reversed that decision; he disallowed the carryback of Branum's alternative minimum tax NOL. The Commissioner reasoned that Branum's initial statement on his 1985 return constituted an effective election and, thus, relinquished the carryback period with respect to *both* his regular NOL and his alternative minimum tax NOL. Branum, in turn, petitioned the Tax Court to redetermine the deficiency.[3]

The Tax Court sustained the Commissioner's determination. The court explained that section 172 permits a taxpayer to elect to carryback *both* his regular NOL and his alternative minimum tax NOL; a split election by which he elects to carryback one or the other is not permissible. Although Branum contends that his failed attempt to make such a split election renders the entire election ineffective, the Tax Court found otherwise. The court concluded that Branum's statement attached to his return constituted an unambiguous election. Hence, Branum was bound by that statement.

The dispute which forms the basis of this appeal is simple: Branum contends that, if his attempted split election is not permissible, he made no election at all. The Commissioner ruled and the Tax Court held, however, that Branum's statement did not

---

[3]Although several other matters were initially in dispute, this case involves only the question at hand. All other issues have been resolved. More, this case was submitted on a stipulation of facts and exhibits.

reflect the attempt to make a split election but, rather, constituted an unambiguous effective election for both his regular and his alternative minimum tax NOL's. In so doing, the court refused to consider other evidence demonstrating his less-than-unequivocal intent to make that election. Branum urges that we reverse the Tax court on the grounds that the Commissioner failed to consider the evidence of his true intent. For the reasons we shall explain directly, we decline to do so.

## II.

We review Tax Court decisions in the same manner in which we review civil actions decided by the district courts.[4] We examine findings of fact for clear error, while we examine conclusions of law *de novo.*[5] The Tax Court's holding that Branum made an effective election is a conclusion of law and, as such, subject to *de novo* review.

This case takes us through the intricate labyrinth that is our Tax Code. In particular, we direct our focus to an individual's ability to offset his income by his losses. A taxpayer who seeks to recognize an operating loss must first apply the loss (carry it back) to the three immediately preceding tax years and carry any remaining loss forward to the succeeding fifteen tax years. A taxpayer may, however, elect to relinquish the carryback period for his operating losses under section 172 of the Code. In that instance, the taxpayer may carry forward the

---

[4]*Grigg v. Commissioner,* 979 F.2d 383, 384 (5th Cir.1992).

[5]*Id.*

4

entire loss to offset the income of subsequent tax years without first carrying it back to the preceding three years. Section 172(b)(3)(C) is the vehicle for making such an election; it provides, in pertinent part:

> Any taxpayer entitled to a carryback period under paragraph (1) may elect to relinquish the entire carryback period with respect to a net operating loss for any taxable year ending after December 31, 1975.

This provision further mandates that the election be made in a manner prescribed by the Secretary and by the due date of the return. Moreover, once made, the election is irrevocable.

A taxpayer who does not effectively communicate his unequivocal intent to relinquish the carryback period for both his regular NOL and his alternative minimum tax NOL has *not* made an effective election. This rule was the subject of some confusion at the time that Branum filed his 1985 return. The House Conference Report to the Tax Reform Act of 1986 addressed this uncertainty the following year:

> It is clarified that an election under Section 172(b)(3)(C) to relinquish the carryback period applies both for regular tax and for minimum tax purposes.[6]

In response to this clarification, the Commissioner published a revenue ruling which similarly explained that an election under section 172(b)(3)(C) applies to both regular and alternative minimum tax NOL's. When faced with the issue in 1991, the Tax Court similarly followed suit and ruled that a taxpayer may not

---

[6]House Conference Report No. 99-841, 99th Cong., 2d Sess. II-262 (1986), U.S.Code Cong. & Admin.News, pp. 4075, 4350, 1986-3 C.B. (Vol. 4), 262.

relinquish the carryback period for one NOL but not the other.[7]  As a result, the rule is clear:  a taxpayer who fails to make an effective election is required to carryback both his regular and his alternative minimum tax NOL.

As a starting point, Branum argues that he did all that he believed was necessary to demonstrate his intent to relinquish the carryback period with respect to his regular NOL only.  He points out that the clarifications of section 172(b)(3)(C) were promulgated after he filed his 1985 return.  Hence, he seeks an excuse from the strictures of section 172 because he filed his return within the murky legal context that those explanations rectified.

We dismiss this "confusion in the law" argument outright.  The complexities of our tax code notwithstanding, a taxpayer cloaked in ignorance will find no safe haven from liability imposed by law.  For "[w]hile the statutory and financial complexities that our unfair tax code often involves are irritating, they are certainly not impossible."[8]  Consequently, the Tax Court has held that oversight, poor judgment, and ignorance of the law all fail to mitigate the binding effect of an otherwise proper election.[9]  As we previously have stated:  "Were simple misreading of the Tax Code

---

[7]*See Plumb v. Commissioner,* 97 T.C. 632, 638, 1991 WL 260735 (1991).

[8]*Vogt v. Abish,* 663 F.Supp. 321, 327 (S.D.N.Y.1987), *judgment remanded,* 842 F.2d 1288, *cert. denied,* 488 U.S. 891, 109 S.Ct. 225, 102 L.Ed.2d 215 (1988).

[9]*See Estate of Stamos v. Commissioner,* 55 T.C. 468, 474, 1970 WL 2371 (1970).

a valid defense to tax liability, ... we have no doubt that incompetency in providing accounting services would carry a premium."[10]

Branum's central contention is that he did not make an effective election under section 172(b)(3)(C) because he did not communicate his "unequivocal" wish to relinquish the carryback for both his regular NOL and his alternative minimum tax NOL.[11] This argument has two components: First, that his initial statement on his return was not an unambiguous, unequivocal election and, second, that the court should have considered his subsequent statement filed with his Form 1045 as further evidence of that ambiguity. We take them in turn.

Branum argues that the statement attached to his main return reflects his intention to waive the carryback period for his regular NOL only. Again, Branum stated:

> Taxpayer, in accordance with I.R.C. section 172(b)(3)(C) hereby elect [*sic* ] to carry foreward [*sic* ] all losses sustained in the calendar year 1985 and forego [*sic* ] carry back of such losses to prior years.

The Tax Court disagreed with that construction. Instead, the court held that the statement constituted an unambiguous, effective election under section 172. The court reasoned that the phrases

---

[10]*Young v. Commissioner,* 783 F.2d 1201, 1204 (5th Cir.1986).

[11]Branum's real burden is to cast a shadow of ambiguity over his intent so that, at the very least, it falls short of "unequivocal".

7

"all losses" and "such losses", plainly encompass both NOL's.[12] Accordingly, the court perceived no evidence of the petitioner's attempt to make a split election.

We agree. The statement, on its face, uses broad language that contradicts Branum's assertion that he intended to make a split election. Branum nonetheless points to the *Plumb* case, ostensibly for the proposition that a taxpayer in similar circumstances should be held to have made no election at all.[13]

In *Plumb,* the taxpayer attached the following statement to his return: "Taxpayers elect to forego [*sic* ] the carryback provision for the *regular* NOL in accordance with section 172(b)(3)(C) ..." (emphasis in original). The *Plumb* court specifically relied on the taxpayer's unambiguous reference to his "regular" NOL. From that, it was apparent that the taxpayer did not understand that he could relinquish both or none. Based upon the taxpayer's statement, clearly intending to make an impermissible split election, the *Plumb* court held that the taxpayer had not made an effective election.[14]

---

[12]The appellant's argument suffers from a fatal circularity. Branum contends that this statement is, by itself, ambiguous. He seeks to use, however, the subsequent statement on his Form 1045 as evidence of that ambiguity. The inference logically follows that, without that subsequent statement, the directive attached to the main return is clear.

[13]In the central holding of that case, the Tax Court held that a taxpayer could not relinquish the carryback period for his regular NOL but not his alternative minimum tax NOL. If you waive one, you waive both.

[14]Although the *Plumb* court did bolster its reasoning with reference to other information contained within the taxpayer's Form 1045, that information supported the opinion, not the

8

The statement in the present matter leads to the opposite conclusion. In this case, Branum stated that he elected to "carry foreward [*sic* ] *all losses* sustained in the calendar year 1985 and forego [*sic* ] carry back of *such losses* to prior years" (emphasis added). These terms leave no trail of ambiguity; unlike the statement at issue in the *Plumb* case, the terms "all losses" and "such losses" indicate that Branum intended to relinquish the carryback for both NOL's. The Tax Court got it right when it held that this statement was "sweeping and unambiguous" and, accordingly, reflected an effective election.

Branum next argues that even if the statement attached to his main return is not ambiguous, his statement in the margin of the schedule filed with his Form 1045 reveals his true intention to make an impermissible split election. The court disregarded this subsequent statement because it ceased to be relevant in the light of Branum's unambiguous initial statement attached to his main return. Branum charges that the court's failure to consider that subsequent statement as evidence of his true intent constitutes legal error. While we are sympathetic with his position, the law is not.

In 1977, the Secretary promulgated temporary regulations implementing section 172(b)(3)(C). These rules provide, in part, that a statement describing the election, the period for which it applies, and the taxpayer's entitlement for making it must be

---

ultimate decision. It is crystal clear from the Tax Court's reasoning that the use of the word "regular" was dispositive as to the taxpayer's intent.

9

attached to the taxpayer's main tax return.[15]  The Tax Court concluded in the present matter that the original statement attached to the return met these criteria and constituted an unambiguous statement of election.[16]

Branum nonetheless urges that the court erred when it failed to consider, as evidence of his intent, the statement attached to his Form 1045:  "Regular NOL not carried back per 172(b)(3)(C) election with 1985 return;  AMT NOL carried back only."  He relies on three cases for the proposition that the Commissioner and the Tax Court were bound to consider evidence outside of his main return on the question of his intent:  *Young v. Commissioner*[17], *Turney v. Commissioner*[18], and *Carlstedt Assoc., Inc. v. Commissioner*[19].  None of these cases, however, stands for that submission.

---

[15]Sec. 7.0(d), Temporary Income Tax Regs., 42 Fed.Reg. 1470 (Jan. 7, 1977).  The regulations dictate that:

> the elections described * * * shall be made by a statement attached to the return (or amended return) for the taxable year.

[16]It is true that "substantial compliance with regulatory requirements may suffice when such requirements are procedural and when the essential statutory purposes have been fulfilled." *American Air Filter v. Commissioner,* 81 T.C. 709, 719, 1983 WL 14887 (1983).  Here, the Tax Court held that Branum had literally complied (i.e., his unambiguous statement of election on the main return), thus obviating the need to look for other indicia of substantial compliance.

[17]783 F.2d 1201 (5th Cir.1986), *aff'g,* 83 T.C. 831, 1984 WL 15635 (1984).

[18]56 T.C.Memo. (P-H) 390 (¶ 87,074), 1987 WL 40167 (1987).

[19]58 T.C.Memo. (P-H) 112 (¶ 89,027), 1989 WL 871 (1989).

First, Branum asserts that *Young* stands for the proposition that "the Commissioner must consider documents filed with the Commissioner outside of a return for purposes of determining whether the taxpayer made an effective election".[20] That case stands for no such rule in its holding or dicta. On the contrary, the Court in *Young* held that the Commissioner could not be charged with knowledge of information beyond that which was contained on the return.[21]

The *Turney* decision is a mildly more helpful case to the appellant. Branum contends that the *Turney* court based its holding that a taxpayer had made a similar election (though under a different provision) upon statements made outside of the taxpayer's return. It is true that the court indicated that the evidence demonstrating an irrevocable intent *may* come from sources outside the return itself.[22] That proposition does not further Branum's position. The *Turney* court never held that the Commissioner *must* look to evidence outside of the return, only that evidence of that intent may properly come from such sources. The court stated:

> What is required is evidence of an affirmative intent on the taxpayer's part to make the required election and be bound thereby.[23]

In this light, it is plain that *Turney* doesn't get Branum where he

---

[20]Brief for Appellant at 12.

[21]*Young,* 783 F.2d at 1206.

[22]*Turney,* 56 T.C.Memo. (P-H) at 394-95, 1987 WL 40167 at 6-7.

[23]*Id.* at 395, 1987 WL 40167 at 6.

11

needs to be. The *Turney* court had no other basis, short of examining evidence outside of the return, for ascertaining the taxpayer's intent. In the matter at hand, that problem doesn't exist. As we have spelled out, all the "evidence of an affirmative intent" was contained on Branum's initial statement. Nothing bound the court to look further.

Last, in the *Carlstedt* case, the Tax Court held that a taxpayer who inadvertently attached an unambiguous statement of election to the return would nonetheless be bound by that statement. Branum submits that the court directed the Commissioner to examine documents filed outside of the return, even though the statement attached to the return was unambiguous. If *Carlstedt* really said that, it would be impressive support for Branum's position. It does not, however. Rather, the Court in *Carlstedt* stated unequivocally that any information beyond the unambiguous statement attached to the return is "irrelevant to the determination of whether a valid and binding election was made under section 172(b)(3)(C)".[24] The court then quoted with approval Judge Higginbotham's emphatic statement from our decision in *Young:*

> [N]ineteen bishops swearing as to the taxpayers' subjective intent would not carry this argument, because it contends for an irrelevant fact.[25]

If nineteen bishops can't do it, a handwritten notation in the margin of a tax schedule filed with a subsequent form mailed under separate cover cannot do it either.

---

[24]*Carlstedt,* 58 T.C.Memo. (P-H) at 129, 1989 WL 871 at 21.

[25]*Id.* (quoting *Young,* 783 F.2d at 1206).

12

In sum, Branum's reliance on these three cases does him more harm than good. They do not, under any plausible reading, stand for the proposition that the Commissioner must look beyond an unambiguous election attached to the taxpayer's return. While the Commissioner is free to consider other evidence, nothing requires that he do so.

Branum's subjective intent ultimately is irrelevant. We are concerned only with the objective manifestation of his intent—here, the unambiguous statement on his return. We hold that this statement is sufficiently indicative of the petitioner's unequivocal intent to make an election. The Tax Court did not err when it refused to consider Branum's subsequent statement.

As a final word, we acknowledge that we are sympathetic with Branum's position. The evidence taken as a whole reveals his genuine intention to make an impermissible split election, just as he contends. The Commissioner, at least by the audit, knew of Branum's true intent (or at least his inconsistent statements).[26] Although the statement in the margin of the schedule to Form 1045 was by no means an election—it merely attempted to characterize the election Branum made on his regular return—the Commissioner should have known what Branum really meant.

---

[26]At oral argument, the parties engaged in a lively debate over whether the Internal Revenue Manual requires the Form 1045 to be stapled to the taxpayer's return when a case file is established. Although we will not pass on the binding nature of those rules, it seems certain that the Commissioner knew of Branum's true intent, at least by the audit. It is a stipulated fact that the Commissioner reviewed Branum's 1985 return and his Form 1045 on the same day.

Accordingly, while the Tax Court's decision is legally unassailable, we recognize that it imposes an election on Branum that he did not wish to make. The law's requirement that the election be "unequivocal" is evidence that a taxpayer who did not clearly seek this election should not be forced to suffer it.[27] We are without recourse, under the strictures of the statute, however, to satisfy Branum beyond these token acknowledgements.[28]

The history of our jurisprudence reflects a particular inflexibility in the application of the tax laws. The collection of revenue does not allow for such case-by-case adjudication. We note this because Branum is not the first, nor will he be the last, taxpayer whose story, however appealing, did not move the I.R.S. Twenty years ago, our colleague Judge Goldberg wrote for this Court in *United States v. Second National Bank of North Miami*[29]. That case presented a similar problem and the Court, with equal reticence, similarly concluded that nothing in the law prevented the I.R.S. from pursuing its cold course.[30] As our resolution in the present matter mirrors his, we appropriate Judge Goldberg's final statement for our concluding thought:

---

[27]*See, e.g., Valdes Commissioner,* 60 T.C. 910, 914, 1973 WL 2669 (1973) (no election must reflect the taxpayer's unequivocal agreement).

[28]*But See* Plato, *The Republic* Bk. I., 343d (B. Jowett trans., Modern Library ed. 1982) ("When there is an income tax, the just man will pay more and the unjust less on the same amount of income.").

[29]502 F.2d 535 (5th Cir.1974).

[30]*Id.* at 549.

14

Our federal tax code may appear to operate with a rigidity that makes its collectors bereft of human pity, conscience, or compassion;  its operation is also an illustration that ours is a government of laws, not men.[31]

AFFIRMED.

---

[31]*Id.*