JOHN C. BRANCH, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Branch v. Commissioner
Docket No. 3351-92
United States Tax Court
T.C. Memo 1994-191; 1994 Tax Ct. Memo LEXIS 187; 67 T.C.M. (CCH) 2822; April 28, 1994, Filed *187 Decision will be entered under Rule 155. John C. Branch, pro se. For respondent: Christopher A. Fisher. FAY
FAY
MEMORANDUM OPINION FAY, Judge: Respondent determined a deficiency in income tax due from petitioner for the year 1988 in the amount of $ 13,101 and an addition to tax attributable to negligence or intentional disregard of rules and regulations within the meaning of section 6653(a)(1)[1] in the amount of $ 655.05. The issues for decision are: [2]
*188 (1) Whether petitioner is entitled to the section 911 foreign earned income exclusion. We hold that he is not. (2) Whether petitioner is entitled to reduce his taxable income by Social Security benefits included in his 1988 income but which the Social Security Administration requested to be repaid. We hold that he is not. (3) Whether petitioner is entitled to a Schedule A theft loss deduction on the 1988 Federal tax return in relation to a theft which actually occurred in 1986. We hold that he is not. (4) Whether petitioner is entitled to the full $ 3,883 Schedule A miscellaneous expense deduction for job-seeking expenses claimed. We hold that he is entitled to a lesser amount. (5) Whether petitioner is liable for an addition to tax for negligence under section 6653(a)(1) for 1988. We hold that he is not. Some of the facts of this case have been stipulated, and by this reference they are so found. The stipulation of facts filed by the parties and attached exhibits are incorporated herein by this reference. Background
Petitioner resided in Houston, Texas, on the date that the petition herein was filed. Petitioner and his wife, Barbara A. Branch, executed a joint *189 Federal income tax return for 1988 on May 11, 1989. Thereafter on November 27, 1989, and February 26, 1990, the Branches executed their first and second amended 1988 joint returns, respectively. The notice of deficiency, dated November 18, 1991, was addressed to "Mr. John C. Branch and Mrs. Barbara A. Branch." Due to marital problems between petitioner and Mrs. Branch, Mrs. Branch did not sign the petition and otherwise chose not to participate in this action. On April 2, 1992, respondent filed her Motion to Dismiss for Lack of Jurisdiction As To Barbara A. Branch and to Change Caption because the petition had not been executed by or on behalf of Mrs. Branch. The Branches were then notified of respondent's motion by the Clerk of this Court by notice of filing dated April 7, 1992, and given until April 27, 1992, to object to respondent's motion. On May 18, 1992, due to the failure to file any objection, this Court granted respondent's motion dismissing the case for lack of jurisdiction as to Mrs. Branch and changed the caption to show petitioner as the sole petitioner in this case. 1. Foreign Income Exclusion
Petitioner was born on May 17, 1925, and was raised in Polk *190 County, Texas. He obtained his bachelors degree in civil engineering from the University of Texas at Austin in 1951. Petitioner was then constantly employed as an engineer and, subsequently, an engineering manager for several companies from 1952 until the fall of 1986. Due to a downturn in the petroleum industry in Texas during the 1980s, petitioner traveled to Egypt to work for an Egyptian petroleum company, Egyptian National Petroleum Pipeline Industries (ENPPI). Petitioner then lived in Egypt from about June 1987 until January 1988. While in Egypt, petitioner discovered that the company he had worked for before working for ENPPI, Brown and Root, Inc., was working on a design and construction effort for a pipeline through Saudi Arabia for the Iraqi Government. Petitioner heard of, and applied for a job on, this project. Petitioner was subsequently hired, but, due to visa requirements, petitioner came back to the United States, where he then lived at his home in Houston, Texas, until he was able to obtain the necessary visa in late May 1988. The employment contract petitioner executed with Brown and Root Saudi Ltd. [3] (Brown and Root) provided for an initial 1-year term of *191 employment, commencing May 25, 1988, with an optional extension at the end of the contract depending on certain variables. Petitioner departed the United States for Saudi Arabia on May 23, 1988, and arrived on May 25, 1988. He then remained there continuously until February 25, 1989, except for an 11-day visit to the United States from September 7, 1988, until September 18, 1988. In February 1989, petitioner suffered a debilitating back injury which forced him to return to the United States for surgery. Petitioner arrived home in Houston, Texas, on February 25, 1989, and remained there continuously at least through the time of the trial of this matter. Petitioner was subsequently declared disabled, and his employer would not allow him to return to Saudi Arabia to conclude his contract. *192 During 1988, while petitioner was overseas, petitioner owned a home in Houston, owned two vehicles, both of which were licensed and maintained in the State of Texas, and was registered to vote in Harris County, Texas. In fact, petitioner filed an absentee ballot in the November 1988 Presidential elections. Petitioner and Mrs. Branch also maintained checking and savings accounts during 1988 at Gibraltar Savings and Loan in Houston, one of such accounts being used for the direct deposit of petitioner's pay by petitioner's employer, Brown and Root. Petitioner received $ 44,560.61 in foreign earned income, as that term is defined in section 911(b)(1)(A), from Brown and Root during 1988. Petitioner elected to exclude this income, pursuant to section 911, on his 1988 tax return. Section 911 provides: (a) Exclusion From Gross Income. -- At the election of a qualified individual (made separately with respect to paragraphs (1) and (2)), there shall be excluded from the gross income of such individual, and exempt from taxation under this subtitle, for any taxable year -- (1) the foreign earned income of such individual, and (2) the housing cost amount of such individual. [Emphasis *193 added.] Section 911(d), in pertinent part, provides: (1) Qualified individual. -- The term "qualified individual" means an individual whose tax home is in a foreign country and who is -- (A) a citizen of the United States and establishes to the satisfaction of the Secretary that he has been a bona fide resident of a foreign country or countries for an uninterrupted period which includes an entire taxable year, [the twelve month test] or
(B) a citizen or resident of the United States and who, during any period of 12 consecutive months, is present in a foreign country or countries during at least 330 full days in such period. [The 330-day test.] [Emphasis added.] To be qualified for the section 911 exclusion, a taxpayer must meet a threshold inquiry of whether he or she has satisfied a foreign presence requirement, the 12-month test or the 330-day test, embodied in the statutory and regulatory framework. After a careful review of the factual record and application of the statutory and regulatory framework, we conclude that petitioner has failed to meet both foreign presence tests and, consequently, is not entitled to the section 911 foreign income exclusion *194 unless it is found that the section 911(d)(4) waiver provision applies to petitioner's case. Because we hold that petitioner did not meet either of the foreign presence tests, we do not reach the issue of whether petitioner established a tax home in a foreign country. Section 911(d)(4) provides: (4) Waiver of period of stay in foreign country. -- Notwithstanding paragraph (1) [the Qualified individual requirement], an individual who -- (A) is a bona fide resident of, or is present in, a foreign country for any period, (B) leaves such foreign country after August 31, 1978 -- (i) during any period during which the Secretary determines, after consultation with the Secretary of State or his delegate, that individuals were required to leave such foreign country because of war, civil unrest, or similar adverse conditions in such foreign country which precluded the normal conduct of business by such individuals, and (ii) before meeting the requirements of such paragraph (1) [the Qualified individual requirement], and (C) establishes to the satisfaction of the Secretary that such individual could reasonably have been expected to have met such requirements but for the conditions *195 referred to in clause (i) of subparagraph (B),
shall be treated as a qualified individual with respect to the period * * * during which he was a bona fide resident of, or was present in, the foreign country, * * *. [Emphasis added.] Section 1.911-2(f), Income Tax Regs., in pertinent part, provides: (f) Waiver of period of stay in foreign country due to war or civil unrest. Notwithstanding the requirements of paragraph (a) of this section, an individual whose tax home is in a foreign country, and who is a bona fide resident of, or present in, a foreign country for any period, who leaves the foreign country after August 31, 1978, before meeting the requirements of paragraph (a) of this section, may, as provided in this paragraph, qualify to make an election under section 911(a) and § 1.911-7(a). If the Secretary determines, after consultation with the Secretary of State or his delegate, that war, civil unrest, or similar adverse conditions existed in a foreign country, then the Secretary shall publish the name of the foreign country and the dates between which such conditions were deemed to exist. In order to qualify to make an election under this paragraph, the individual *196 must establish to the satisfaction of the Secretary that the individual left a foreign country, the name of which has been published by the Secretary, during the period when adverse conditions existed and that the individual could reasonably have expected to meet the requirements of paragraph (a) of this section but for the adverse conditions. The individual shall attach to his return for the taxable year a statement that the individual expected to meet the requirements of paragraph (a) of this section but for the conditions in the foreign country which precluded the normal conduct of business by the individual. * * * [Emphasis added.] Petitioner argues that he is entitled to the benefit of the waiver provision described above because his sudden departure from Saudi Arabia, due to his career-ending back injury, was under "adverse conditions". Respondent argues that the waiver provision has not been met, and the section 911 exclusion is thus unavailable to petitioner because (1) petitioner's back injury was not the type of adverse condition contemplated by section 911(d)(4), and (2) because Saudi Arabia was not included on the list of countries eligible for section 911(d)(4) *197 treatment until the issuance of Rev. Proc. 91-29, 1991-1 C.B. 562, which provides that Saudi Arabia qualifies for periods beginning on or after January 17, 1991. We agree with respondent's contention that the section 911(d)(4) waiver is inapplicable here because, at the time petitioner left Saudi Arabia, it was not included on the list of countries eligible for section 911(d)(4) treatment. We hold that the basic requirements for the application of the section 911(d)(4) waiver provision have not been met; thus, petitioner is not entitled to use of the section 911 foreign earned income exclusion for 1988. Because of our holding here, we need not reach the question of whether petitioner's situation might otherwise qualify for the "adverse conditions" contemplated by the statute. [4] Finally, petitioner's contention that respondent impliedly granted petitioner's waiver request by sending him a document entitled "Correction Notice - Refund Due Taxpayer", is entirely without merit and will not be further addressed here. *198 2. Social Security Income
On the 1988 return, petitioner reported the receipt of $ 8,189 in Social Security benefits on line 21a. Pursuant to section 86, one-half of this amount, or $ 4,095, was properly included in gross income on line 21b. The first amended return, executed November 27, 1989, included a handwritten note claiming that these Social Security benefits should be excluded from gross income because the "Social Security Department [had] demanded the return of all 1988 Social Security Benefits * * * [due to the] money earned by * * * [petitioner] during 1988". The second amended return, executed February 26, 1990, repeated the claim for a refund of taxes attributable to Social Security benefits included in the original 1988 return. Respondent determined in her notice of deficiency that the taxable Social Security benefits should be $ 4,084 instead of $ 4,095 as originally reported. At trial, petitioner made reference to a canceled check in the amount of $ 1,320.94 dated March 27, 1990, initially raising the inference that it represented an amount paid back, from the 1988 benefits received, to the Social Security Administration. On cross-examination, however, *199 petitioner admitted that this particular check represented the repayment of "other Social Security benefits". In general, petitioner bears the burden of showing respondent's determination is erroneous. Rule 142(a). In the immediate case, not only has petitioner failed to produce any evidence which would tend to refute respondent's determination, but petitioner has testified that payments he did have evidence of, but failed to have admitted at trial, represented payments with respect to Social Security benefits received other than those involved here. Petitioner has failed to meet his burden; therefore, we sustain respondent's determination on this issue. 3. Theft Loss
Petitioner reported an $ 8,265 theft loss on Form 4684 of the 1988 return. After adjustments on Form 4684, pursuant to section 165(h), [5] petitioner claimed a $ 5,019 theft loss on line 18 of Schedule A attached to the 1988 return. Respondent initially discovered an error in petitioner's computation that was to petitioner's advantage and issued a correction notice, which is not dated, determining that the loss, after adjustments pursuant to section 165(h), should be $ 5,521 instead of the $ 5,019 claimed *200 by petitioner. Respondent's notice of deficiency disallowed the loss in its entirety. Petitioner testified at trial and the record reflects that the theft causing the loss actually occurred in April 1986. On petitioner's 1986 return, petitioner claimed this theft loss but did not utilize it to reduce his taxable income. Instead, petitioner wrote the following at the top of his 1986 Schedule A, "Because of large tax credit carry over this * * * [casualty loss] is being carried forward and not included in 1986 Return." [6] At trial, in contrast to the reason set forth on his 1986 Schedule A, petitioner testified that he did not deduct the loss in 1986 because he believed that there was a reasonable prospect of recovery of the stolen items. [7] Petitioner also stated, however, *201 that there was no insurance coverage for the stolen items, but that the Houston Police Department hoped that some of the items would be recovered. We choose to *202 disregard petitioner's after-the-fact reasons for not utilizing the theft loss deduction in 1986 and find that the contemporaneous statement written on the 1986 return is the more reliable explanation as to why petitioner did not use this deduction. Therefore, the issue which now must be resolved is whether petitioner properly elected to relinquish the 3-year carryback of this loss as provided by section 172(b)(3)(C). A theft loss suffered by an individual is deductible, subject to limitations under section 165(h), to the extent not compensated for by insurance or otherwise. Sec. 165(a), (c)(3). In general, the loss is allowable in the year it is sustained; [8] however, if section 165(c)(3) losses exceed adjusted gross income, they are treated the same as a net operating loss and may be carried back and carried over in accordance with section 172. Sec. 172(d)(4), (b); sec. 1.172-3(a)(3)(iii), Income Tax Regs. Under section 172, a net operating loss, in general, must be carried back to each of the 3 taxable years preceding the year of loss, and carried over to each of the 15 taxable years following the year of loss. Sec. 172(b)(1)(A) and (B). A taxpayer may, however, elect to *203 "relinquish" the entire carryback period with respect to a net operating loss for any taxable year. Sec. 172(b)(3)(C). Section 172(b)(3)(C) also provides: Such election shall be made in such manner as may be prescribed by the Secretary, and shall be made by the due date (including extensions of time) for filing the taxpayer's return for the taxable year of the net operating loss for which the election is to be in effect. * * * Section 7.0(d), Temporary Income Tax Regs., 42 Fed. Reg. 1470 (Jan. 7, 1977), entitled "Various elections under the Tax Reform Act of 1976", provides: (d) Manner of making election. Unless otherwise provided in the return or in a form accompanying a return for the taxable year, the elections described in paragraphs (a) and (c) * * * shall be made by a statement attached to the return * * * for the taxable year. The statement required when making an *204 election pursuant to this section shall indicate the section under which the election is being made and shall set forth information to identify the election, the period for which it applies, and the taxpayer's basis or entitlement for making the election. Petitioner, in essence, contends that the quoted language from his 1986 return constitutes a valid election to relinquish the 3-year carryback period. Respondent contends that petitioner is not entitled to carry forward the 1986 casualty loss to 1988 because (1) petitioner failed to make a valid election to forego the 3-year carryback period, and (2) petitioner did not prove that he was entitled to a net operating loss carryover from 1986 for 1988 pursuant to section 172. The language on petitioner's 1986 return attempting to relinquish the 3-year carryback period does not constitute literal compliance with the applicable regulatory requirements set forth above. Young v. Commissioner, 783 F.2d 1201 (5th Cir. 1986), affg. 83 T.C. 831 (1984); Branum v. Commissioner, T.C. Memo. 1993-8, affd. 17 F.3d 805 (5th Cir. 1994). *205 We do not, however, reach the question of whether the employed language constitutes substantial compliance because, assuming arguendo that it does, petitioner still must prove that he is entitled to the carryover deduction in 1988.[9]Rule 142(a). After review of the entire record, we conclude that petitioner has not done so. 4. Job-Hunting Expenses
Petitioner's trade is that of an engineer, having worked as an engineer, and engineering manager, for 34 consecutive years. Petitioner claimed $ 4,412 in expenses for seeking employment during 1988. After reduction of this amount by the 2-percent-of-adjusted -gross-income threshold, petitioner deducted $ 3,883 on Schedule A, line 24, of the 1988 return. Respondent contends that, under section 212, petitioner is not entitled to deduct this $ 3,883 amount for job-seeking expenses because it was spent in pursuit of *206 a new trade or business. Petitioner contends the disputed amount was spent in pursuit of the same trade or business but concedes by his own written statement attached to the 1988 return that a portion of these expenses was attributable to a seminar which, inter alia, gave instruction on how to obtain employment in a new trade or business. Section 162 permits deduction of all ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business. This includes expenses paid in seeking employment in the taxpayer's trade or business. See, e.g., Primuth v. Commissioner, 54 T.C. 374 (1970). These expenditures, to the extent substantiation exists, are deductible regardless of whether employment is obtained. Cremona v. Commissioner, 58 T.C. 219 (1972). If the taxpayer is seeking a job in a new trade or business, however, the expenses are not deductible under section 162(a). Dean v. Commissioner, 56 T.C. 895 (1971). Petitioner bears the burden of persuasion on this issue. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). *207 We believe that petitioner did in fact pay expenses in the pursuit of employment during the first half of 1988, despite the fact that he already had obtained employment in Saudi Arabia. Petitioner testified, and we believe, that the latter employment arrangements were not guaranteed, not having been reduced to writing and executed until May 25, 1988; therefore, petitioner was merely attempting to obtain local gainful employment without having to travel around the world to do so. The difficulty with this case, however, is in the proof. Mathematical exactness is not required. Georgescu v. Commissioner, T.C. Memo. 1992-597. Doing the best we can with the record here and applying the principle enunciated in Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930), of the $ 4,412 of expenses claimed, we can allow only an $ 800 deduction for job-hunting expenses because of the sketchy and inexact nature of petitioner's proof. [10] We do not allow a $ 2,800 deduction claimed by petitioner for the purchase of diving equipment because petitioner has failed to provide a nexus between such expense and his trade as an engineer. *208 It may well be that petitioner had more of this type of expense in 1988, but the proof in this record will not support any further allowance. 5. Addition to Tax for Negligence
On the 1988 return, petitioner reported a $ 5,019 rental loss deduction, which he concedes was mistakenly claimed. Respondent contends that petitioner, pursuant to section 6653(a)(1), negligently claimed the $ 5,019 rental loss deduction, the $ 44,560.61 foreign earned income exclusion, and the theft loss carryover. Section 6653(a)(1)(A) provides for an addition to tax of 5 percent of the underpayment of tax if any part of the underpayment is due to negligence or intentional disregard of rules and regulations. Section 6653(a)(1)(B) imposes an addition *209 to tax equal to 50 percent of the interest due on the portion of the deficiency attributable to negligence. Negligence is the lack of due care or the failure to do what a prudent person would do under the circumstances. Neely v. Commissioner, 85 T.C. 934, 937 (1985). Where a taxpayer, however, provides sufficient information concerning the deductions taken to apprise respondent of the nature and amount of the claimed deduction, the addition to tax for negligence may not apply. Belz Investment Co. v. Commissioner, 72 T.C. 1209, 1233-1234 (1979), affd. 661 F.2d 76 (6th Cir. 1981); Cryder v. Commissioner, T.C. Memo. 1977-103. The amount claimed as a rental loss deduction corresponds with the theft loss deduction reported on petitioner's Schedule A. After review of the record, we are satisfied that this entry constitutes an innocent duplication and was merely an honest mistake. Therefore, we do not feel the negligence addition is warranted with respect to this deduction. With respect to the section 911 foreign earned income exclusion and the theft loss deduction *210 claimed by petitioner, we are also satisfied that, upon thorough review of the entire record, the negligence addition does not apply. Petitioner, in preparing the 1988 return, identified, with what we now find was adequate disclosure, the mentioned exclusion and deduction in a very thorough and thoughtful manner. In fact, the disclosures embodied in the return and amended returns indicate petitioner's good faith and reasonableness, not to mention a true effort to comply with the laws. As such, respondent's determination with respect to the addition to tax, under section 6653(a)(1), will not be sustained. To reflect the foregoing, Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code in effect for the year at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.↩
2. Respondent also made an adjustment to petitioner's medical expense deduction, and determined that petitioner is only entitled to the use of the $ 5,000 standard deduction for 1988. We do not address these two items because they are subject to a mathematical computation in light of our holdings herein.↩
3. The record is vague on the corporate relationship between Brown and Root, Inc., and Brown and Root Saudi Ltd.; however, although not determinative of the outcome here, the record does reflect that they are separate entities.↩
4. We do not, however, believe that the facts involved in this case would allow petitioner the benefit of this waiver provision.↩
5. Sec. 165(h)(1) establishes a $ 100 minimum limitation per casualty loss. Sec. 165(h)(2)↩ further provides, in general, that the net casualty loss will be allowed only to the extent that such loss exceeds 10 percent of adjusted gross income.
6. Respondent asserts, and the Court believes, that this was also done because petitioner was able to reduce his 1986 taxable income to zero, from an adjusted gross income of $ 63,583.66, without utilizing the reported theft loss.↩
7. By so testifying, petitioner was attempting to avail himself of the application of sec. 1.165-1(d), Income Tax Regs., Sec. 1.165-1(d), Income Tax Regs., provides in pertinent part: (2)(i) If a casualty or other event occurs which may result in a loss and, in the year of such casualty or event, there exists a claim for reimbursement with respect to which there is a reasonable prospect of recovery, no portion of the loss with respect to which reimbursement may be received is sustained, for purposes of section 165↩, until it can be ascertained with reasonable certainty whether or not such reimbursement will be received. * * *
8. Under sec. 165(e)↩ a theft loss is treated as sustained during the taxable year the loss is discovered.
9. Petitioner failed to present any evidence that would indicate that the loss was not used in whole or in part for the intervening 1987 tax year.↩
10. Despite our finding that petitioner is entitled to this amount as actual costs spent for job-hunting expenses during 1988, this finding may be of no avail to petitioner due to the 2-percent-of-adjusted-gross-income threshold that these job-hunting expenses are subject to. Sec. 67(a).↩