**PUBLISH**

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 95-3040
_____

D. C. Docket No. 7263-93

BRADLEY C. MILLER and
DIANNE M. MILLER,

Petitioners-Appellants,

versus

COMMISSIONER OF INTERNAL REVENUE,

Respondents-Appellees.

-------------------------------------------
Appeal from the Decision of the United States Tax Court
(Florida Case)
-------------------------------------------
(                    1996)

Before BARKETT, Circuit Judge, DYER and HILL, Senior Circuit Judges.

HILL, Senior Circuit Judge:

This appeal from the Tax Court involves the issue of whether the taxpayers' election statement under Internal Revenue Code Section 172 (b) (3) (C)[1] unequivocally communicated their intent to

_____

[1] In general, an NOL is carried back to each of three preceding years to offset taxable income (beginning with the earliest year first). Then, to the extent that it has not been absorbed, the NOL is carried

relinquish the carryback period for both a net operating loss (NOL) and an alternative minimum tax net operating loss (AMT NOL). Finding that it did not, we reverse the decision of the Tax Court.

## I.

Bradley C. and Dianne M. Miller filed their 1984 federal income tax return. They reported a tax liability of zero, and an alternative minimum tax (AMT) liability of $46,000. The Millers paid this sum to the Commissioner of Internal Revenue (Commissioner) in a timely manner. The next year the Millers sustained an NOL of $332,000 and an AMT NOL of $156,000. An opportunity for personal income tax planning was presented as, naturally, the Millers wanted to offset both types of 1985 losses against income to the greatest lawful advantage under the tax code.

Robert B. Krusoe was the Miller's certified public accountant. In preparing their 1985 return, Krusoe determined that, if the Millers carried back their 1985 AMT NOL to 1984, they would be entitled to a refund of $41,000. He found no such benefit in carrying back their "regular" NOLs. Krusoe concluded that it would be financially beneficial to the Millers if they elected to relinquish the carryback period for "regular" NOLs and carry them over only into future years.

Krusoe then researched whether this could be done legally under

---

forward to each of the next fifteen years. I.R.C. § 172 (b)(1), (2). A taxpayer may irrevocably elect to relinquish his three-year carryback period. I.R.C. § 172 (b)(3)(C). In that case he may use the NOL only by carrying it forward to offset income in subsequent years. *Id.*

the tax code.[2]  At the time, there was a dearth of information on the treatment of AMT NOLs for carryback purposes.  Relying on an article in a respected tax periodical,[3] substantiated by the written opinion of a former IRS employee and colleague, and his own research, Krusoe filed an election on the Millers' behalf to waive the NOL carryback period and, in so doing, attempted to "split" their election:

> In accordance with the Internal Revenue Code Section 172, the Taxpayers hereby elect to forego the *net operating loss carry back period* and will carryforward the *net operating loss*. (Emphasis added.)

Krusoe testified that it was his intent to waive only the regular NOL carryback period and not the AMT NOL carryback period.  He claims that was why he chose the singular word "loss" and not its plural, "losses."  Krusoe prepared the election statement by tracking

---

[2]  Krusoe testified that, if his research had shown that the carryback periods could not be split, he fully intended to carry both losses back to assure the refund rightfully due the Millers.

[3]  The article stated:

> It is unclear whether both a regular NOL and AMT NOL from the same year must be given the same carryover treatment.  For example, it may be possible to carryback a regular NOL and elect to carry forward an AMT NOL even though both NOLs originated in the same year. Independent treatment would seem appropriate in that for 1983, separate treatment was required due to the fact that an AMT NOL could not be carried back to a pre-1983 year, but no such limitation applied to a regular tax NOL.

Gary R. Stout & Earl J. Weiss, "Analysis of the Alternative Minimum Tax Net Operating Loss:  The Second NOL", 61  *J. Tax.,* 418, 422 (December 1984).

the exact statutory language of NOLs in the tax code. By so doing, he intended the term "net operating loss" to mean regular NOLs. He thought it unnecessary to refer to AMT NOLs at all.[4]

Thereafter Krusoe filed an amended 1984 return for the Millers and carried back their AMT NOL. He did not carryback their NOL.[5] The return stated:

> The amended return is filed to carryback an alternative minimum taxable net operating loss in accordance with Internal Revenue Code § 55(d). AMT NOL computations are on page 5 and first carried back to 1983, on page 6, then to 1984 also on page 6.

Subsequently, the Millers received a refund of $41,000 from the Commissioner.

## II.

Hindsight and writing skills were not in Krusoe's favor. In 1986, a House Conference Report was issued, making it clear that "an election under section 172 (b) (3) (C) to relinquish the carryback period applies both for regular tax and for minimum tax purposes." 2 H.R. Rep. No. 99-841, 99th Cong., 2d Sess. II-262, 283 (1986). One year later, the Commissioner issued a revenue ruling stating that the election was indivisible and could not be split. Rev. Rul. 87-44,

---

[4] Expert witnesses testified at trial that, in the early 1980's, the term 'net operating loss' was commonly understood by members of the tax accounting industry to mean regular NOLs, not AMT NOLs.

[5] Krusoe's cover letter to the Millers, with their completed 1985 return, stated that, for 1985, they had sustained a "regular net operating loss of [$332,000] which [had] been elected to be carried forward . . . [and] an alternative minimum tax net operating loss of [$156,000], which . . . [the Millers, with the assistance of Krusoe, would] carryback after [the] return [was] filed."

4

1987-1 C.B. 3. In addition, in 1991, the Tax Court ruled that NOLs and AMT NOLs could not be split and carried in different directions. *Plumb v. Commissioner,* 97 T.C. 632, 636 (1991).

Subsequently, in 1993, the Commissioner issued a notice of deficiency to the Millers, disallowing the carryback of the AMT NOL, and, seeking the return of the refunded AMT. The Millers filed a petition in the Tax Court contesting the Commissioner's determination. They argued that, after *Plumb,* 97 T.C. at 632, if they were not permitted to split their carryback periods*,* then their election was invalid as ambiguous on its face, and they should be allowed to carryback *both* their AMT NOL *and* their regular NOL.

The Tax Court rejected this contention stating:

> . . . objectively and on its face, when considered in the context of the election, [the election] does not create ambiguity or show that [the taxpayers] attempted to carry forward only NOL's computed by the regular method. The operative language in [the taxpayers'] election included the phrase "to forego the net operating loss carry back period." Under the statute, that necessarily would include NOLs and AMT NOLs.

The Tax Court found that the Millers' election statement unequivocally and unambiguously communicated an intent to waive the carryback period for both their NOL and their AMT NOL. It held, as a matter of law, that the Millers had made an effective election under Code Section 172 (b)(3)(C) and were bound by that election. We review the Tax Court's holding *de novo. Powers v. Commissioner,* 43 F.3d 172, 175 (5th Cir. 1995); *Branum v. Commissioner,* 17 F.3d 805, 808 (5th Cir. 1994).

III.

5

While this issue is one of first impression in this circuit, the Fifth Circuit has considered it twice recently. *Powers v. Commissioner,* 43 F.3d 172 (5th Cir. 1995); *Branum v. Commissioner,* 17 F.3d 805 (5th Cir. 1994). In both *Branum* and *Powers,* the taxpayers attempted a split election that was later found to be unavailable to them. The Fifth Circuit determined that a taxpayer's election to waive the carryback period under Code Section 172 (b) (3) (C) must be unequivocal and unambiguous to be effective. *Powers,* 43 F.3d at 176; *Branum,* 17 F.3d at 811; *see also Young v. Commissioner,* 783 F.2d 1201, 1206 (5th Cir. 1986).

In *Branum,* the taxpayer attempted to file a "split" election notice, sending NOLs and AMT NOLs in different directions for offset purposes. Unlike the Millers, however, the *Branum* taxpayer used the plural word, "losses," and the phrase, "all losses," in his election statement. 17 F.3d at 806. When it was later determined that a split election was impermissible, the *Branum* taxpayer sought to repudiate his election, as he, like the Millers, benefited from waiving the carryback only as to his NOLs and not his AMT NOLs. The Fifth Circuit found that he had waived the carryback periods for both. *Id.* The *Branum* taxpayer's use of the plural in his election statement "unequivocally communicated his intent" to waive both types of losses, *id.* at 808, and left no room for even a "shadow of ambiguity."[6] *Id.* at 809 n.11. This was fatal to his claim. *Id.* at 809.

In *Powers,* the taxpayer, in his attempt to file a "split" election

---

[6] In this case, the Tax Court found that the Millers should not be permitted to repudiate their own language by showing, what it termed "a mere shadow of ambiguity."

notice, used the right subsection of the tax code but the wrong section number. The Fifth Circuit held the taxpayer's error caused his election to be ambiguous on its face and fatal to the validity of his election. *Powers,* 43 F.3d at 177. The court found that an invalid election is no election at all and that the *Powers* taxpayer had not relinquished the right to carryback his NOLs.[7] *Id.* at 179.

Under a *de novo* review, the same result is in order here. As the taxpayers in *Branum* and *Powers,* the Millers attempted a split election under Code Section 172 (b) (3) (C) that was later determined to be unavailable to them. *Plumb,* 97 T.C. at 641. Unlike the *Branum* election notice, however, the Miller's notice did not refer to "losses" but to "loss.[8]" Using the Fifth Circuit precedent of *Branum* and *Powers* as guidance, we find the Miller's election to be ambiguous and equivocal on its face, and hence, invalid. *Branum,* 17 F.3d at 805; *Powers,* 43 F.3d at 175. For purposes of Code Section 172 (b) (3) (C), their invalid election is no election at all. *Id.* Therefore, the Millers have not relinquished their right to carryback both their regular NOLs and their AMT NOLs. *Id.*

IV.

---

[7] Here the Tax Court distinguished *Powers* on the basis that the Millers had used language that had correctly cited the proper code section.

[8] The Tax Court here found itself "compelled to hold that the [singular] term "net operating loss" objectively and on its face, when considered in the context of the election, does not create ambiguity or show that [the Millers] attempted to carry forward only NOL's computed by the regular method."

7

The decision of the Tax Court is REVERSED.

REVERSED.