United States Court of Appeals,

Fifth Circuit.

Nos. 94-40005, 94-40006 and 94-40007.

M. Lane POWERS, Petitioner-Appellant,

v.

COMMISSIONER OF INTERNAL REVENUE SERVICE, Respondent-Appellee.

Jan. 26, 1995.

Appeals from the Decisions of the United States Tax Court.

Before GARWOOD, JOLLY and STEWART, Circuit Judges.

STEWART, Circuit Judge:

This consolidated appeal from the Tax Court involves the issue of the sufficiency of an award for litigation costs to prevailing taxpayer M. Lane Powers under § 7430 of the Internal Revenue Code as well as the issue of whether Powers made an unequivocal, irrevocable election to relinquish the three-year carryback provision of § 172(b) of the Code. We affirm in part, reverse in part, and remand in part.

*Assignments of Error*

On appeal, M. Lane Powers alleges the following assignments of error:

> (1) That the Tax Court erred in holding that he unequivocally elected for the years 1978 and 1979 to relinquish the three-year carryback period provided by Internal Revenue Code Section 172(b);
>
> (2) That the Tax Court erred in refusing to award attorney's fees for 298.35 hours out of the 559.50 total hours expended by Powers' counsel in settling the case on the merits and in pursuing the motion for litigation costs;  and
>
> (3) That the Tax Court erred in refusing to award attorney's fees at a rate higher than the statutory rate (plus a cost of

living increase) for the hours reasonably expended in the case.

*BACKGROUND*

This consolidated appeal encompasses three Tax Court cases commenced by Petitioner-Appellant M. Lane Powers. Powers timely filed federal income tax returns for the years 1976 through 1979. The IRS audited Powers' 1976 and 1977 returns and issued notices of deficiency. Powers instituted litigation in the Tax Court in response to the 1976 and 1977 notices of deficiency.[1] The IRS requested that Powers sign extensions of the statute of limitations for assessing additional tax for the years 1978 and 1979. Powers agreed and signed IRS Forms 872A in 1982 and 1983, giving the IRS open-ended extensions that could be terminated by either party with 90 days' notice.

Until 1986, the IRS never audited or even contacted Powers about auditing the 1978 and 1979 returns. On March 31, 1986, Powers gave the IRS a 90-day notice of termination of the open-ended extension of the statute of limitations for the 1978 and 1979 returns. Upon receipt of the notice of termination, the 1978 and 1979 tax returns were assigned to an IRS agent who disallowed $1,853,043 and $4,804,790 of deductions on the 1978 and 1979 tax returns respectively by eliminating all deductions of $9,000 or more. From this report, the IRS issued a timely notice of deficiency to Powers for approximately $2.3 million for the tax

---

[1]On appeal, the 1976 tax deficiency is the subject of Case No. 94-40005, and the 1977 tax deficiency comprises Case No. 94-40006.

2

years 1978 and 1979.

In the 1976 and 1977 litigation, Powers alleged that he had sustained net operating losses (NOLs) in 1978 and 1979 and was entitled, by virtue of the normal statutory rules applicable to net operating losses, to carry back the NOLs to 1976 and 1977. As a consequence of these NOL carrybacks, Powers alleged that he was entitled to refunds in 1976 and 1977. The IRS filed a motion for partial summary judgment with respect to Powers' 1976 and 1977 tax years, taking the position that Powers' 1978 and 1979 returns contained special elections in which he relinquished the normal carryback of those losses and elected instead to carry forward the 1978 and 1979 NOLs to subsequent years. The Tax Court granted the IRS's motion for summary judgment, finding that Powers had irrevocably elected to relinquish his right to carry the 1978 and 1979 losses back to 1976 and 1977.

The same day the Tax Court granted the IRS' motion for summary judgment with regard to years 1976 and 1977, Powers commenced litigation in the Tax Court to contest the proposed deficiencies for 1978 and 1979.[2] Powers maintained that his 1978 and 1979 returns were correct as filed and that he owed no additional taxes. He claimed that he sustained NOLs in 1978 and 1979 in the amounts of $1,054,355 and $2,985,344. At that point, Powers' bankruptcy proceeding was restarted, resulting in a stay of all Tax Court litigation. Four years later, the cases were reactivated, and in

---

[2]On appeal, the 1978 and 1979 tax deficiencies form the basis for Case No. 94-40007.

1990, the 1978-1979 case was set for trial.

On the eve of trial in March 1991, the IRS stipulated that Powers owed no deficiency in taxes or penalties for 1978 and 1979 and had sustained NOLs that were later agreed to be $87,607 and $1,597,293. The IRS also stipulated in the 1976 and 1977 cases that if the NOLs from 1978 and 1979 were available for carryback, Powers would owe no taxes for 1976 and 1977 but rather would be entitled to refunds of $97,228.84 and $5,964.64. Without the NOL carryback, the parties stipulated that Powers would owe additional taxes for 1976 of $61,455.02 and would be entitled to a refund in 1977 of $683.45.

The Tax Court, in response to Powers' motion to reconsider, reaffirmed its decision (on the IRS motion for summary judgment) that Powers had relinquished his right to the carrybacks and entered judgment based on the parties' stipulations. Powers has appealed the Tax Court's grant of the IRS motion for summary judgment for both 1976 and 1977.

In March 1991, as soon as the IRS conceded the 1978 and 1979 litigation, Powers filed a claim for an award of litigation costs. This matter was tried for four days in November 1991. Upon the judge's order, a transcript was prepared, and the parties filed briefs through the first four months of 1992.

On May 25, 1993, the Tax Court determined that Powers was entitled to an award of litigation costs. The Court awarded $55,709 out of a claim of $148,560.67. Powers filed a motion for reconsideration and later a motion to revise the 1978 and 1979

4

decision, claiming that the Court had failed to award attorney's fees for hours expended on the 1978 and 1979 case. The court denied these motions. Powers has appealed the award of litigation costs as well.

*ANALYSIS*

*A. Motion for Summary Judgment*

As noted above, Powers has appealed the Tax Court's grant of the IRS's motion for summary judgment. The court granted the motion upon a finding that Powers had made an irrevocable, valid election under § 172 of the Internal Revenue Code to carry *forward* his NOLs from 1978 and 1979; therefore, the Tax Court determined that Powers could not carry *back* those losses to 1976 and 1977. Powers argues that a valid election was not made; hence, he contends that he has the right to carry back his 1978 and 1979 NOLs to 1976 and 1977, entitling him to substantial refunds for those years.

*Standard of Review*

We review Tax Court decisions in the same manner in which we review civil cases decided by the federal district courts. *Grigg v. Commissioner,* 979 F.2d 383, 384 (5th Cir.1992). We review the appeal of a grant of a summary judgment *de novo* to ascertain whether any genuine issue of fact exists and whether the moving party is entitled to judgment as a matter of law. *City of Arlington v. FDIC,* 963 F.2d 79, 81 (5th Cir.1992). The Tax Court's holding that Powers made an effective election is a conclusion of law also subject to *de novo* review. *Branum v. Commissioner,* 17

5

F.3d 805 (5th Cir.1994).

*Discussion*

The Tax Court granted the Internal Revenue Service's motion for summary judgment based upon its finding that Powers had made an irrevocable, unequivocal election to relinquish his ability to carry back his net operating losses for 1978 and 1979. We disagree. We find that, on the undisputed facts, the taxpayer made no such unequivocal, irrevocable election.

Section 172 of the Internal Revenue Code sets forth rules under which a taxpayer who incurs a net operating loss[3] in one taxable year may use that loss to offset income of taxable years prior to or subsequent to the year of the loss. The Code allows a NOL deduction in a given taxable year for the aggregate of the NOLs carried over and back to that year. *See* 26 U.S.C. § 172(a).

For tax years 1978 and 1979, 26 U.S.C. § 172(b)(1) and (b)(2) provided that a NOL was required first to be carried back to each of the three years preceding the year of the loss, and then, to the extent the loss was not fully absorbed by taxpayer's income in the carryback years, it could be carried forward to each of the seven years following the loss.[4]

A taxpayer, however, may elect to relinquish the 3-year carryback period, in which event he may use the NOL only by

_____

[3]The term "net operating loss" for purposes of § 172 means "the excess of the deductions allowed by this chapter over the gross income." 26 U.S.C. § 172(c).

[4]For tax years beginning after December 31, 1981, the carryover period is 15 years. *See* 26 U.S.C. § 172(b)(1)(A) as it currently exists.

6

carrying it forward to offset income in subsequent years.

During the tax years in question, Section 172(b)(3)(C) of the Internal Revenue Code provided:

> Any taxpayer entitled to a carryback period ... may elect to relinquish the entire carryback period with respect to a net operating loss for any taxable year ending after December 31, 1975. Such election shall be made in such manner as may be prescribed by the Secretary, and shall be made by the due date (including extensions of time) for filing the taxpayer's return for the taxable year of the net operating loss for which the election is to be in effect. Such election, once made for any taxable year, shall be irrevocable for that year.

In 1977, the Treasury Department promulgated temporary regulations prescribing the procedure for making elections under, *inter alia,* § 172(b)(3)(C). These regulations are still in effect. They provide, in pertinent part, as follows:

> (d) *Manner of making election.* Unless otherwise provided in the return or in a form accompanying a return for the taxable year, the elections ... shall be made by a statement attached to the return (or amended return) for the taxable year. *The statement required when making an election pursuant to this section shall indicate the section under which the election is being made* and shall set forth information to identify the election, the period for which it applies, and the taxpayer's basis or entitlement for making the election. (Emphasis added.)

Temp.Regs. § 7.0, *reprinted in* 1977-1 C.B. 587, redesignated in 1992 as Temp.Regs. § 301.9100-12T T.D. 8435, *reprinted in* 1992-2 C.B. 324.

The requirement for making an election under § 172 is discussed in *Young v. Commissioner,* 783 F.2d 1201 (5th Cir.1986). *Young* cited with approval the temporary regulations that prescribe the manner in which such an election should be made. *Young* held that an election under Section 172(b)(3)(C) must be *unequivocal* and *unambiguous.*

7

Powers' 1978 return had attached to it a statement that read, "Pursuant to Section 56(b)(3)(C), Taxpayer elects to carryforward to 1979 the net operating loss of 1978" (emphasis added). A similar statement was attached to the 1979 return. The Internal Revenue Code contains no provision with the citation § 56(b)(3)(C). Section 56 of the Code pertains to alternative minimum tax, not to the net operating loss deduction.

Powers argues that the above statement, which refers to § 56, does not constitute an election under *§ 172* to waive his right to carry back the 1978 and 1979 losses. Powers contends that the statements attached to his 1978 and 1979 returns fall short of qualifying as an election under § 172 in two ways. First, Powers points out that the above statement contains no language whereby he elected to "*relinquish* the carryback period," as § 172 indicates. Second, Powers points out that, under the regulations, the statement of election must "indicate the section under which the election is being made." Powers argues that, because there is no § 56(b)(3)(C) of the I.R.C., his statements attached to his returns are ambiguous and cannot be construed as an unequivocal election under § 172 to relinquish the right to carryback.

Alternatively, Powers argues that even if this Court finds that facially valid § 172 elections were made for 1978 and 1979, such elections were made based upon mistakes of material facts; therefore, Powers contends that he should not be bound by such elections. He relies upon statements made in *Meyer's Estate v. Commissioner,* 200 F.2d 592, 595-97 (5th Cir.1952) to the effect

that there is no election without full knowledge of the facts.[5] Our finding that Powers' purported election was invalid pretermits a discussion of whether Powers might also be entitled to relief on the basis of his alleged material mistake of fact.

With regard to Powers' first argument, he contends that the statement attached to his returns contained language whereby he only elected to carry forward his NOLs, not to relinquish his right to carryback. As explained above, under § 172(b), a NOL is ordinarily required to be first carried back three years and then forward into subsequent years so long as it is not completely consumed in the carryback years. Thus, it is not inconsistent to both carry back and carry forward a loss. The purported election by Powers merely states that the loss for each year will be carried forward to the next year. Thus, Powers contends that he made no valid election to forego his right to the carryback. Taken alone, we are not persuaded that the failure to expressly "relinquish" the right to carryback would be fatal to a § 172 election. The IRS correctly points out that there is no requirement that any magic words or incantation be used to effect the election. Moreover, although it is possible *absent an election* to carry a NOL both backward first and then forward until it is fully absorbed, whenever there is an election to carry forward a NOL, that

_____

[5]Powers points out that the returns he filed for 1975, 1976, and 1977 showed tax liabilities vastly different from what was later discovered to be his true tax burden for those years. At the time his 1978 and 1979 returns were filed, Powers claims he was mistaken to a substantial degree about his true earnings and/or losses for earlier years.

9

necessarily operates as a relinquishment of the right to carryback. A taxpayer who did not wish to avoid the carryback would not be making an election at all. Thus, we do not find Powers' failure to use the magic words "relinquish the entire carryback period" dispositive of the issue of whether he made a valid election.

However, with regard to Powers' second argument, we reach a different conclusion. We find the failure to cite § 172 fatal to the election's validity. The Commissioner argues that the above statement unequivocally expresses an election under § 172, notwithstanding the erroneous reference to § 56. The Commissioner points out that Subsection (b)(3)(C) is the correct subsection of § 172; thus, Powers had the right subsection but the wrong section number. Nonetheless, the Commissioner contends that the meaning of the election was clear: Powers elected to relinquish the carryback period and chose instead to carry forward his NOL's for 1978 and 1979 into subsequent years, as contemplated by § 172. We disagree. We think, at the very least, an election under § 172 must correctly cite § 172. In this case, the election referred to § 56. Accordingly, we will not construe it as an election under § 172.[6]

---

[6]*See and compare, Branum v. Commissioner,* 17 F.3d 805 (5th Cir.1994), in which a taxpayer sought to avoid the consequences of his election by claiming he did not communicate his unequivocal wish to relinquish carryback for *both* his regular NOL and his alternative minimum tax NOL. The taxpayer's statement correctly cited section 172 and provided that he elected to carry forward *all losses* sustained in 1985 and forego carryback of such losses to prior years. This Court held that he relinquished the carryback with respect to both the regular NOL and the minimum tax. To the extent that the Commissioner relies on *Branum* as support for its position that Powers made a valid election, his reliance is misplaced, as the election in *Branum* was a "model" election which correctly cited the Code section and unequivocally

Moreover, we disagree with the IRS' characterization of the reference to § 56 as some sort of minor typographical or inadvertent error which we should disregard. The statements attached to Powers' returns for *both years* referred to § 56, persuading us that this was not merely a minor typographical error.[7]

Powers also points to undisputed facts concerning the circumstances surrounding the making of the purported elections which support his argument. The affidavits of Powers and Warren reflect that the statements in the tax return in question were intended merely to defer the minimum tax liability that otherwise would have been imposed on Powers in 1978. While the parties' intent is irrelevant to the issue of whether an election is valid,[8] for illustrative purposes we will briefly discuss what Powers seems to have been trying to do in making an election under § 56 to carry

established Branum's intent to forego the carryback period.

[7]*Cf., Santi v. Commissioner,* T.C. Memo 1990-137, 1990 WL 26558, wherein the Tax Court found a valid election where the taxpayer erroneously referred to § 172(b)(2)(3) rather than § 172(b)(3)(c). *Santi* is distinguishable from the instant case because the election there correctly referred to § 172, as the temporary regulation requires, albeit that the wrong *subsection* was cited.

[8]In *Young, supra,* we declined to look beyond the face of the purported election to consider the taxpayers' argument that they fully contemplated carrying forward their NOL despite the ambiguity in the tax return. Judge Higginbotham emphatically noted that "nineteen bishops swearing as to taxpayers' subjective intent would not carry this argument, because it contends for an irrelevant fact. The Commissioner did not have access to the taxpayers' workpapers and was not otherwise informed of their state of mind." 783 F.2d at 1206. *See also, Branum, supra,* 17 F.3d at 811.

11

forward his NOL for minimum tax purposes only.

In the years at issue, § 56 imposed a minimum tax on tax preference items of taxpayers. Pursuant to § 56(b), if, in the year in which a minimum tax liability would otherwise have been imposed, the tax preference items did not give rise to a tax benefit because of a NOL, the minimum tax liability could be deferred. The affidavits establish that the purpose of the statements on Powers' returns was to alert the IRS that Powers was attempting to take advantage of that deferral provision, first deferring the minimum tax liability from 1978 to 1979, then from 1979 to 1980. The reference to Section 56 in the purported election statements was intended only as a reference to the minimum tax statute, according to Powers.

The Commissioner attacks Powers' argument that his election was intended to apply only for minimum tax purposes. He notes that, before 1982, the I.R.C. did not provide for the carrybacks and carryovers of alternative minimum tax NOLs. *See Plumb v. Commissioner, infra,* 97 T.C. at 636-37, 1991 WL 260735. Accordingly, the Commissioner asserts that Powers could not have intended on his 1978 and 1979 returns to relinquish the carryback period only for minimum tax purposes. Powers counters by pointing out that, even though he could not in fact waive the carryback period only for alternative minimum tax purposes, he thought he could do so. Accordingly, Powers asserts that the statements attached to his returns, wherein he attempted to carry forward his NOL only for the purposes of the alternative minimum tax, certainly

12

should not be construed as a valid election under § 172 to forego the carryback for regular tax purposes.

*Plumb v. Commissioner,* 97 T.C. 632, 1991 WL 260735 (1991), supports Powers' position. *Plumb* involved a similar situation in which a taxpayer sought to make a split election. In *Plumb,* the taxpayers' purported election stated that they elected to "forego the carryback period for the *regular* NOL in accordance with Section 172(b)(3)(C) and will carryforward this NOL to subsequent years." The Tax Court found that the purpose of the election was to *relinquish* the carryback period with respect to the regular income tax and to *use* the carryback period for purposes of an alternative minimum tax NOL. The Court found that such a "split" election was not authorized by the Internal Revenue Code; therefore, the election was invalid. The court noted that *an invalid election is no election at all* and held that the taxpayer had not relinquished the right to carryback. The same result is in order here.

We hold that the statements attached to Powers' 1978 and 1979 returns cannot be construed as elections to relinquish the carryback period under § 172 because they do not cite § 172, as the regulations require. The IRS's argument that we should look beyond the erroneous citation to § 56 and instead infer a valid § 172 election flies in the face of the temporary regulation, *Branum, Young,* and *Plumb.* Paraphrasing Judge Higginbotham's statement in *Young* and applying it to the instant case, we note that nineteen IRS agents swearing to what they believe to be Powers' subjective intent does not carry the argument that Powers made a valid § 172

13

election. The IRS's argument that Powers really must have intended to make a § 172 election given the unavailability of alternative minimum tax carrybacks at the time is inapposite given the fact that the statements attached to his returns for both years referred to § 56, not § 172.

*B. Motion for Litigation Costs*

Section 7430 of the Internal Revenue Code provides:

(a) In any administrative or court proceeding which is brought by or against the United States in connection with the ... refund of any tax, ... the prevailing party may be awarded a judgment or settlement for—

....

(2) reasonable litigation costs incurred in connection with such court proceeding.

26 U.S.C. § 7430(a)(2) (1988).

The term "reasonable litigation costs" is defined in § 7430(c)(1)(B)(iii) as follows:

(iii) reasonable fees paid or incurred for the services of attorneys in connection with the [civil] proceeding, except that such fees shall not be in excess of $75 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for such proceeding, justifies a higher rate.

Powers contends the Tax Court's award was too low in two respects: (1) the number of hours; and (2) the hourly rate.

*Standard of Review*

We review the overall amount of a prevailing party's attorney fee award under the abuse of discretion standard, and we review the tax court's subsidiary findings of fact for clear error. *Bode v. United States,* 919 F.2d 1044, 1047 (5th Cir.1990).

14

*Discussion*

*1. The Number of Hours Awarded*

Powers' first assignment of error is that the number of hours of billable time the Tax Court awarded was too low. Powers argues that the Tax Court failed to award attorney's fees for four distinct periods of time: (a) 65.35 hours in preparation for trial and settlement of the 1978 and 1979 cases; (b) 102.25 hours in preparation for trial of the motion for litigation costs; (c) 42 hours for reading and summarizing the transcript of the trial of the motion for litigation costs and supplementing Powers' proposed findings of fact and brief; and (d) 88.75 hours for reviewing the government's brief on the motion for litigation costs and preparing and filing objections to the IRS findings of fact and a reply brief.

*(a) Merits of 1978 and 1979 Litigation*

With regard to the work performed on the merits of the 1978 and 1979 litigation, Powers sought reimbursement for 185.35 billable hours. The trial court concluded that only 120.00 hours were reasonable. Powers argues on appeal that all 185.35 hours expended on the 1978 and 1979 litigation were reasonable and necessary. It points out that the bankruptcy trustee, who had control of Powers' records, had thrown away all of Powers' books of account and cancelled checks and most of his records for these years, and as late as two weeks before trial, the IRS claimed that Powers owed tax, penalties, and interest totalling $7,145,267 for these two years. Within a three-week period in February-March

15

1991, a total of 162.75 hours were spent trying to gather sufficient third-party documentation to support Powers' claims. Once this preparation was over, the results were disclosed to the IRS, which soon conceded that Powers owed none of the $7,145,267 and in fact had sustained NOL's in 1978 and 1979. Powers contends that the record contains a detailed description of the work performed and the names of the lawyers involved. He argues that there is no evidence to suggest that any of the time expended was unnecessary or unreasonable. Accordingly, Powers asserts that the Tax Court was clearly erroneous in concluding that 65.35 of the 185.35 hours were unreasonably spent and that it was an absolute abuse of discretion for the judge to so conclude.

The IRS points out that the court below cited *Cassuto v. Commissioner,* 93 T.C. 256, 270, 1989 WL 98722 (1989), *aff'd in part and rev'd in part,* 936 F.2d 736 (2d Cir.1991), in support of its decision to disallow 65.35 of the hours. In *Cassuto,* the Tax Court refused to allow attorney's fees for some of the hours requested by the prevailing party because settlement of that case might have come more quickly, and sizable amounts of litigation costs might have been avoided, if the taxpayer had provided verifying information to the IRS earlier than he did. The Second Circuit concluded that the reduction constituted a reasonable exercise of the Tax Court's discretion.

The IRS argues that because the trial judge cited *Cassuto* in support of his decision to disallow 65.35 of the hours, he somehow must have felt that Powers was to blame for many of the hours

16

expended shortly before trial in trying to secure substantiating information from third parties after it was learned that the records had been destroyed by the bankruptcy trustee. The implication is that, had the verifying information been provided earlier, many of the hours would not have been expended because the case might have settled or perhaps the records would not have been destroyed. Because the trial judge does not explicitly state this in the opinion, it is difficult to determine if this is in fact why the award was reduced. Nonetheless, based on the record, we do not find that it was clearly erroneous or an abuse of discretion for the trial judge to have reduced this award.

*(b) Motion for Litigation Costs from October 16, 1991 through November 5, 1991*

With regard to the preparation for the motion for litigation costs, Powers claimed 102.25 hours between October 16, 1991, and November 5, 1991. At the motion for litigation costs, Powers presented a daily summary of the number of hours each attorney worked on the case during this period. The summary does not explain how the attorneys had spent their time. With regard to time spent in preparation for the motion for litigation costs during earlier months, i.e., before October 15, 1991, Powers had submitted detailed computerized reports that specifically showed how the attorneys had spent their time. The Tax Court found *all* those hours to be reasonable.

With regard to the time spent between October 15—November 5, 1991, it seems that a computerized report providing a detailed explanation of hours worked was not ready until November 15, 1991,

17

after the record was closed on the attorney's fee motion. The Tax Court declined to award compensation for *any* of those hours because Powers presented no detailed explanation of the services provided, relying on *Bode v. Commissioner, supra.*

In *Bode,* the Court noted that "broad summaries" of work done and hours logged are insufficient. However, the Court recognized that contemporaneous billing records are not an absolute requirement. *Bode, supra,* and *Heasley v. Commissioner,* 967 F.2d 116, 123 (5th Cir.1992). In *Heasley,* the taxpayer's attorney merely submitted an affidavit establishing that "substantially all" of the attorney's time devoted to the case pertained to the penalty issues, which were the only issues to proceed to trial. The Tax Court made an award on the basis of this sole affidavit, and this Court affirmed. In *Bode,* the taxpayer's sole proof consisted of an expert who merely testified that the firm charged around $119,000 total and that, at one time, one of the attorney's charged $175 per hour. The taxpayer did not provide evidence on the number of hours billed, the precise hourly rate charged, or the attorneys who worked on the file. In the instant case, the summary provided by Powers showed on a day-to-day basis the number of hours worked by each attorney and the hourly rate each charged. Thus, the summary provided by Powers does not seem to be the type of "broad summary" found insufficient in *Bode.* In fact, the *Bode* court noted that the evidence presented in that case could not have established even a "ball park" figure of the actual number of hours billed.

In contrast, the summary provided by Powers was very specific

18

with regard to the hours billed and by whom.  The only information lacking in the Powers summary was a description of the work done.  In light of the fact that the time period in question was during the three weeks immediately prior to the hearing on the motion for litigation costs, it seems unquestionable that significant amounts of time were indeed spent and that any time expended was in trial preparation.  The IRS correctly points out that Powers could have submitted his attorneys' manual billing sheets to support his claim for litigation costs during the last month before the motion, but as noted above, contemporaneous billing records are not the only way to prove the number of compensable hours in a § 7430 claim.  Any type of adequate evidence which permits the Court to determine the number of hours expended and whether they are reasonable will satisfy the taxpayer's burden of proof.  *Bode, supra.*

Powers argues that the testimony of his attorney, Robert White, established the nature of the services performed during the time period in question.  Upon reviewing White's testimony, it seems that he established to some degree what at least some of the time represented, i.e., interviewing witnesses, working on stipulations, reviewing the file, preparing a legal memorandum that was filed the day before White testified, etc.  While Powers provided *very* detailed information about the vast majority of work done in this case, it does not seem that *Bode* requires the degree of specificity that the Tax Court seems to have wanted.  Thus, the less detailed information about work performed during this three-week period should not have been disregarded necessarily.

19

It was clearly erroneous and an abuse of discretion for the Court to have refused an award for *any* hours during this period on the basis of *Bode.* It should also be noted that Powers did try to provide the more detailed computer printouts for the three-week period along with his motion for reconsideration, but the Court refused to consider it, stating that the record on the motion for litigation costs was closed.

*(c) After Hearing on Motion for Litigation Costs, from January 17, 1992, to January 22, 1992*

With regard to the time expended after the hearing on the motion for litigation costs, Powers claimed 42 hours of services rendered from January 17, 1992, to January 22, 1992. The Tax Court refused to award anything for these hours. Powers claims that the presiding judge at the hearing ordered Powers to file proposed findings of fact within 75 days after the hearing, which Powers did. In addition, the judge granted Powers permission to submit additional pleadings claiming additional litigation costs for whatever time was expended in the case on post-trial submissions. Accordingly, Powers filed a supplemental brief on the motion for litigation costs on January 23, 1992. That same date, Powers submitted a fourth amendment to the motion for costs claiming additional hours expended over and above those proven at the hearing, i.e., the hours through November 5, 1991. White's affidavit accompanied the motion and included a computerized billing report, similar to those previously submitted, for the period of November 6, 1991 through the January 15, 1992 cut-off date. All time during this period was deemed reasonable by the

Court.  Once again, as of the January 23, 1992, affidavit date, no computer report existed for any time expended after January 15, 1992.  Therefore, in addition to the computerized report covering the period through January 15, White's affidavit listed daily hours expended on the case by White and Sherlock from January 17 through January 22, 1992, a total of 42 hours.  The affidavit did not contain a description of the services provided during those hours, but Powers argues that the nature of the services rendered was obvious given the fact that the Court had ordered the proposed findings of fact and was aware of the filing of the amended motion for litigation costs.  Considering that the post-trial submissions were filed on January 23, 1992, along with White's affidavit which showed 42 hours expended in the case for the five days preceding the filing of those documents, we are convinced that the time was expended in preparing the documents.  We conclude that it was an abuse of discretion for the Court to have awarded *no* fees for the preparation of these documents, particularly with regard to those the Court itself had ordered Powers to submit.

*(d) Preparation of Reply Brief, March 30, 1992, through April 28, 1992*

For the period from March 30, 1992, through April 28, 1992, Powers claimed a total of 89.25 hours spent in preparation of a reply brief that the Tax Court ordered Powers to file.  In White's affidavit, he estimated he and Sherlock would spend a total of 35 hours in preparing the reply brief.  In actuality, they billed for 89.25 hours.  Powers claims that the extra time required was due to the fact that the IRS brief was 156 pages long, contained 155

21

separate proposed findings of fact, 55 separate objections to Powers' proposed findings, and lengthy legal argument on the five points the IRS contested. The Tax Court refused to award *any* time for the preparation of the reply brief, stating that much of taxpayer's reply brief was duplicative or was not responsive to the IRS's brief. While it seems that the Tax Court would have been within its discretion to *reduce* the number of hours awarded on this basis, it was an abuse of discretion for the Court to have refused to award *anything* for the preparation of the reply brief, particularly given the fact that the Court had ordered Powers to submit it.

*(e) Tax Court's Refusal to Consider Billing Reports Submitted with the Motion for Reconsideration*

Powers final argument is that the Tax Court erred in not considering the computerized billing reports submitted with the motion for reconsideration. As this Court recognized in *Lavespere v. Niagra Machine & Tool Works, Inc.,* 910 F.2d 167, 175 (5th Cir.1990), upon which Powers relies, the trial court may, without abusing its discretion, refuse to reopen the record when the moving party fails to provide a suitable explanation for providing tardy evidence. In this case, Powers could have produced adequate evidence in a timely manner, i.e., through the production of the attorneys' manually prepared billing sheets. While we do not necessarily agree with the Tax Court's decision not to at least consider the computerized billing statements provided with the motion for reconsideration (consideration of the statements might have avoided an appeal on this issue), we cannot say it was an

22

abuse of the Tax Court's discretion to refuse to consider the additional evidence. Of course, the fact that the Tax Court had discretion to refuse to consider additional evidence submitted after the record was closed does not mean that the Court did not abuse its discretion in not making awards for the time periods discussed above based on billing information that *was* in the record and which appears to satisfy the requirement of *Bode.*

*2. The Hourly Rate*

With regard to the hours the Tax Court found were reasonably expended, the Court awarded fees at the statutory rate of $75 per hour and added a cost of living adjustment, as the statute authorizes, bringing the hourly rate awarded up to approximately $92.00. The Court rejected Powers' request that he be awarded fees at the normal hourly rate charged by his attorneys.

Section 7430(c)(1)(B)(iii), quoted above, provides that attorney's fees should not be awarded in excess of the statutory rate unless some special factor, "such as the limited availability of qualified attorneys for such proceeding" justifies a higher rate. The Tax Court found no special factor. The trial court's determination in this regard is reviewed only for abuse of discretion. *Pierce v. Underwood,* 487 U.S. 552, 571, 108 S.Ct. 2541, 2553, 101 L.Ed.2d 490 (1988).

Powers cites cases arising under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d) to illustrate what a "special factor" is. The EAJA contains identical language to § 7430.

In *Pierce, supra,* the Court held that a special factor under

23

the EAJA may be present with respect to attorneys who are qualified in some specialized sense, rather than just in their general legal competence. Powers argues that his attorneys' tax specialization qualifies them for a higher reward. An expertise in tax law, in and of itself, is not a special factor warranting a higher hourly fee. *See Bode.*

The Supreme Court in *Pierce* emphasized that departure from the $75 cap is to be the exception rather than the rule. The Court cautioned that the "special factor" formulation suggests that Congress thought $75 an hour (plus cost-of-living increases) was generally quite enough public reimbursement for lawyers' fees.

In *Perales v. Casillas,* 950 F.2d 1066 (5th Cir.1992), this Court recently explained that a "special factor" under the EAJA means nonlegal or technical abilities possessed by, for example, patent lawyers and experts in foreign law, as distinguished from other types of substantive specializations currently proliferating within the profession. An expertise in tax law is a type of "substantive specialization currently proliferating within the profession" and thus is not a special factor under the reasoning of *Perales.* In *Perales,* this Court held that a special factor exists only if (1) the number of competent attorneys who handle cases in the specialized field is so limited that individuals who have possibly valid claims are unable to secure representation; *and* (2) that by increasing the fee, the availability of lawyers for these cases will actually be increased.

In the instant case, Powers submitted no evidence that there

was a shortage of lawyers who could have handled this case, nor did he show that the field of available lawyers would be enlarged by increasing the fee award.  Although the Tax Court found that Powers needed the services of a tax attorney as well as an attorney with "an extraordinary level of general lawyerly knowledge," these findings do not justify an increased award under § 7430.  Moreover, the Tax Court found that the resolution of the case was brought about more by the taxpayer's accountant than the lawyers.  Powers argues that the case was much more complex than a routine substantiation case because the primary records had been lost, through no fault of his own.[9]  While it is true that the lost records presented a problem, the fact is that the case was resolved fairly quickly once the secondary records were presented and explained to the IRS.

In *Pierce v. Underwood, supra,* the district court granted a fee in excess of $75 per hour based upon the novelty and difficulty of the issues, the undesirability of the case, the work and ability of counsel, the results obtained, and the customary fees and awards in other cases.  The Supreme Court held it was an abuse of discretion to rely on any of those factors.  Thus, in the instant case, Powers is not entitled to an increased award on any of these

---

[9]When a trustee was appointed in Powers' bankruptcy case, the trustee directed Powers and his employees to vacate the premises of Powers' business and not to remove any records.  The bankruptcy trustee, as owner of his business records, subsequently allowed the management company of Powers' office buildings to discard some of Powers' records, including all his books of account and cancelled checks and most business records for 1978 and 1979.

25

bases.

Moreover, a point raised by the IRS has special merit. Sixty-seven percent of the hours for which taxpayer seeks attorney's fees (i.e., 374.15 out of 559.5 hours) were incurred in connection with his motion to recover fees and costs. Even if some special factor existed to merit a higher award with regard to the underlying claim, there has been no showing that any special factor justifies an increased rate for litigating the attorney's fees motion. For example, an expertise in tax law is not required to litigate such an issue.

Also, a point noted in *Bode* merits mention here. Section 7430 pertains specifically and exclusively to tax cases. If a special expertise in tax law qualifies as a "special factor" under Section 7430, the exception would wholly swallow the rule because almost all attorneys seeking compensation under section 7430 possess an expertise in tax law. (In *Bode,* a special factor was found to exist partly because the tax case there also required a special knowledge of the quarterhorse industry. *Bode,* 919 F.2d at 1050.)

In light of these facts, we hold that the Tax Court did not abuse its discretion in refusing to find a "special factor" and refusing to award attorney's fees at a higher hourly rate than the statute calls for. We therefore affirm this portion of the Tax Court's ruling.

*3. Attorney's Fees for this Appeal*

Powers has also requested attorneys' fees for the time devoted to this appeal. In order to analyze Powers' eligibility

for such an award, we must determine whether Powers is a "prevailing party" on appeal. *Heasley, supra,* 967 F.2d at 125.

Powers has not prevailed on every issue raised during this appeal. He has prevailed on the issue of the carryback of the NOL, and we have found in his favor on the number of billable hours awarded for three of the four time periods in question. He did not prevail on the issue of whether a "special factor" existed to warrant hourly rates for his attorneys higher than the statutory rates (plus the cost-of-living adjustment), and he lost on one of the time periods for which he sought additional hours to be awarded for work performed on the 1978 and 1979 litigation.

On balance, these two losses are "not of such magnitude as to deprive [him] of prevailing party status." *Ibid.,* citing *Bode,* 919 F.2d at 1052. (internal quotation omitted). Consequently, to the extent that Powers prevailed on this appeal, he is entitled to reimbursement for fees *that relate to his success on appeal. Ibid.* Accordingly, Powers is directed to submit to this court his application for fees incurred on these issues during this appeal, together with supporting documents, prior to the issuance of the mandate in this case. *See* Fed.R.App. P. 41.

### Conclusion

We REVERSE the Tax Court with respect to Powers' right to carryback the NOL's from 1978 and 1979. We AFFIRM the Tax Court's award of 120.00 billable hours spent on the merits of the 1978 and 1979 litigation. We REVERSE the Tax Court's refusal to make any award for work performed on the motion for litigation costs during

27

the following three time periods:  (1) between October 16, 1991, and November 5, 1991;  (2) between January 17, 1992, and January 22, 1992;  and (3) between March 30, 1992, and April 28, 1992.  We REMAND to the Tax Court to make an award for reasonable litigation costs and fees during these time periods based upon the billing summaries that are a part of the record.  We AFFIRM the Tax Court's determination that no "special factor" existed to warrant an hourly rate higher than the statutory rate (plus the cost-of-living adjustment).  Powers is also entitled to an award of attorneys' fees from this appeal, to be determined by this court after submission of the necessary documentation.