# IN THE UNITED STATES COURT OF APPEALS

# FOR THE FIFTH CIRCUIT

m 98-60503

ESTATE OF ALTO B. CERVIN, DECEASED;
NITA-CAROL CERVIN MISKOVITCH and BENNETT W. CERVIN, Executors,

Petitioners-Appellants,

VERSUS

COMMISSIONER OF INTERNAL REVENUE,

Respondent-Appellee.

Appeal from the Decision of the United States Tax Court

January 24, 2000

Before HIGGINBOTHAM and SMITH, Circuit Judges, and DUPLANTIER, District Judge.[*]

JERRY E. SMITH, Circuit Judge:

As a "prevailing party" in a previous tax deficiency dispute with the Internal Revenue Service (the "IRS," the "government," or the "Commissioner"), the taxpayer appeals the Tax Court's denial of an award of attorneys'

fees above the $75 per hour limit imposed by the Internal Revenue Code. Because we agree with the Tax Court that no "special factor" existed to justify deviating from the statutorily-imposed cap, we affirm.

I.

Alto Cervin (the "decedent") had two children, Bennett Cervin and Nita-Carol Cervin Miskovitch, who were the heirs and co-executors of the estate.[1] In response to the

_____

[*] District Judge of the Eastern District of Louisiana, sitting by designation.

[1] We refer to the estate and children collectively
(continued...)

federal tax return filed by the estate, the IRS issued a notice of deficiency that, in pertinent part, involved (1) an adjustment of the value of the decedent's fractional interests in each of four real properties (The estate had valued each property at a 25% discount for the decedent's fractional interest.) and (2) the inclusion in the estate of 100% of the value of three life insurance policies on the decedent's life that had been purchased during his marriage to his predeceased spouse. In response to the notice of deficiency, petitioners filed a petition for redetermination in the Tax Court.

In an earlier opinion, the Tax Court had decided that the gross estate included 100% of the proceeds from the life insurance policies and that a 20% discount applied in valuing the real properties. *See Estate of Cervin v. Commissioner*, T.C.M. (CCH) 1115 (1994). The estate then moved for an award of its litigation costs pursuant to 26 U.S.C. § 7430 on the ground that it had substantially prevailed with respect to both the amount in controversy and as to the most significant set of issues. The Tax Court denied the motion.

The estate appealed on the insurance and litigation costs issues, asserting that only 50% of the life insurance proceeds should be included in the gross estate and claiming entitlement to an award of reasonable litigation costs under § 7430. We reversed, holding that petitioners had substantially prevailed with respect to the amount in controversy and that the Commissioner's position with respect to the insurance proceeds and the property valuation was "not substantially justified." Thus, we held that the estate was entitled to

---

(...continued)
as "petitioners."

recover its reasonable litigation costs, and we remanded for the Tax Court to determine the correct tax due and the amount of attorneys' fees and other litigation costs to be recovered. *See Estate of Cervin v. Commissioner*, 111 F.3d 1252 (5th Cir. 1997) ("*Cervin I*").

On remand, the Tax Court recalculated the amount of tax due and found that all the attorney time resulting in fees sought by the petitioners should be allowed but that no "special factor" existed to justify the award of fees in excess of the statutory $75 cap. *See T.C. Memo* 1998-176 (May 12, 1998) at 7. Thus, the Tax Court awarded $88,963.56 in fees and costs, rather than the $224,063.55 claimed by petitioners.

II.
Section 7430 of the Internal Revenue Code, 26 U.S.C. § 7430, states that a "prevailing party" can recover "reasonable litigation costs," including reasonable fees paid to attorneys, but that "such fees shall not be in excess of $75 per hour unless the court determines that an increase in the cost of living or a *special factor*, such as the limited availability of qualified attorneys for such proceeding, justifies a higher rate" (emphasis added). *See* § 7430(C)(1)-(b)(iii). In support of their contention that they are entitled to the full amount of fees they were charged, petitioners assert two distinct theories that they allege establish a "special factor."

First, petitioners argue that their attorney's expertise in tax law, combined with his expertise in Texas community property and insurance laws, constitutes a special factor, because it was necessary to the litigation. Second, they assert, in the alternative, that the Commissioner's "untenable" litigation positions in the Tax Court deficiency

2

proceeding and in *Cervin I* should also be considered special factors. In support of this second argument, petitioners point out that the position the Commissioner took in the proposed deficiency was contrary to well-established Texas law, that the position was in violation of the IRS's own regulation and its revenue ruling, and that it was contrary to *Estate of Cavanaugh v. Commissioner*, 51 F.3d 597 (5th Cir. 1995).

We review for abuse of discretion the Tax Court's determination that no special factor existed. *See Pierce v. Underwood*, 487 U.S. 552, 571 (1988); *Powers v. Commissioner*, 43 F.3d 172, 179 (5th Cir. 1995). In determining the meaning of the "special factor" exception to the statutory cap, this court has looked to cases interpreting the identically worded provision of the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d). *See, e.g., Powers*, 43 F.3d at 183.

### A.

Petitioners assert that their attorney's special expertise in tax law and Texas community property and insurance laws constitutes a special factor because that expertise was necessary to the litigation. As further support for their claim, they point to the limited availability of attorneys with the required specialization and to the fact that an increased award of fees would help alleviate such shortage. In response, the Commissioner urges that a speciality in tax law can never be sufficient to meet the requirements of the "special factor" analysis and that petitioners must show, instead, that their attorney possessed some unique "nonlegal or technical" abilities that contributed to the limited availability of attorneys capable of handling the litigation.

In *Underwood*, 487 U.S. at 571-72, the Court interpreted the "limited availability" special factor language in the EAJA and explained that

> [i]f the "limited availability of qualified attorneys for the proceedings involved" meant merely that lawyers skilled and experienced enough to try the case are in short supply, it would effectively eliminate the $75 cap . . . . We think it refers to attorneys having some distinctive knowledge or specialized skill needful for the litigation in questionSSas opposed to an extraordinary level of the general lawyerly knowledge and ability useful in all litigation. Examples of the former would be an identifiable practice speciality such as patent law, or knowledge of foreign law or language.

As a result of *Underwood*, this court adopted a two-pronged test to determine whether limited availability and specialization can constitute a "special factor." Under that test, a limited-availability special factor exists if "(1) the number of competent attorneys who handle cases in the specialized field is so limited that individuals who have possibly valid claims are unable to secure representation; and (2) . . . by increasing the fee, the availability of lawyers for these cases will actually be increased." *Perales v. Casillas*, 950 F.2d 1066, 1078 (5th Cir. 1992). Thus, petitioners correctly observe that the special factor inquiry involves consideration of three criteria: (1) whether the attorneys had a specialized skill that was necessary to the litigation; (2) whether the number of attorneys with such skill was so limited that litigants with potentially valid claims were unable to obtain counsel; and (3) whether an increased fee award would have reduced this shortage.

We further delineated the "special factor" analysis in several cases since *Underwood*. First, in *Bode v. United States*, 919 F.2d 1044 (5th Cir. 1990), we held that "counsel's expertise in tax law, in and of itself, is not a special factor warranting a fee award in excess of $75 per hour under section 7430." *Id.* at 1050. We did note in *dictum*, however, that the attorney's "[s]pecial legal expertise about the quarterhorse industry may well have qualified as a special factor," but that the taxpayers had failed to establish such attorney's limited availability in that case. *See id.* at 1051.

Next, in *Perales*, we focused on the language of *Underwood* that provided examples of the types of expertise that could qualify as a special factor under the "limited availability" inquiry. Specifically, we noted "that patent law appropriately represents a specialized area because of the specific technical training required of members of the Patent Bar," including "scientific and technical qualifications, which make them uniquely qualified to render a valuable service," and the fact that "the Patent and Trademark Office administers a separate examination for admission to the Patent Bar, further restricting the pool of potential attorneys." *Perales*, 950 F.2d at 1078 & n.15. We concluded that

> we believe that the Supreme Court in *Underwood* intended to distinguish *nonlegal or technical abilities* possessed by, for example, patent lawyers and experts in foreign law, from other types of substantive specializations currently proliferating within the profession. In a sense, every attorney practicing within a narrow field could claim specialized knowledge.

*Id.* at 1078 (emphasis added).

This articulation of the "limited availability" standard illustrates this court's view that this is a very narrow exception. And under this test, the skills of petitioners' attorney do not qualify as a special factor.

Petitioners do not point to any "nonlegal or technical abilities" possessed by their attorney, and none was necessary. Rather, petitioners' attorney apparently possessed skill in several *legal* areas, such as tax law and Texas community property and insurance laws, that proved useful, even necessary, for the successful litigation of this case. But under the *Perales* standard, that is not enough.

Petitioners urge that the standard articulated in *Perales* is mere *dictum* and that the holding that increased fees were not available actually was premised on the fact that the district court had not found a limited availability of qualified attorneys to handle immigration cases. *See id.* at 1079. On this point, petitioners are correct that the discussion of patent law and of "nonlegal or technical abilities" was not outcome-determinative.

Three years later, however, we reconfirmed the approach of *Perales* in *Powers*, noting that *Perales* had "explained that a 'special factor' under the EAJA means nonlegal or technical abilities possessed by, for example, patent lawyers and experts in foreign law, as distinguished from other types of substantive specializations currently proliferating within the profession." *Id.* at 183. We also said it was not enough that "Powers needed the services of a tax attorney as well as an attorney with 'an extraordinary level of general lawyerly knowledge.'" *Id.*

4

Again, petitioners seek to distinguish *Powers* by arguing that its endorsement of the *Perales* standard was not necessary to the holding. Petitioners are correct that the court noted that, unlike the estate in the instant case, "Powers submitted no evidence that there was a shortage of lawyers who could have handled this case, nor did he show that the field of available lawyers would be enlarged by increasing the fee award." *Id.*

But, at a minimum, *Bode*, *Perales*, and *Powers* evince this court's assessment that the Supreme Court intended its listing of the patent and foreign-language lawyer examples to be narrow exceptions, and these cases demonstrate the judicial conclusion that "Congress thought that $75 an hour was generally quite enough public reimbursement for lawyers' fees, whatever the local or national market might be." *Underwood*, 487 U.S. at 572. Thus, to the extent that *Perales* and *Powers* left any room for doubt about whether the "special factor" analysis requires "nonlegal or technical abilities," we now conclude that it does so require.

This conclusion is bolstered by the fact that the award of *any* attorneys' fees can happen only pursuant to a waiver of sovereign immunity. As a result, such waiver must be strictly construed. *See Fenton v. Federal Ins. Adm'r*, 633 F.2d 1119, 1122 (5th Cir. Jan. 1981) ("[A]s a limited waiver of sovereign immunity, [EAJA] is to be strictly observed.").[2]

Petitioners also assert that because they presented expert-witness testimony that established all three of the required criteria, and because the Commissioner did not challenge this evidence, the Tax Court's finding that no special factor exists violated the holding of *Powell v. Commissioner*, 891 F.2d 1167, 1173 (5th Cir. 1990). Specifically, they argue that the Tax Court abused its discretion by disregarding the only evidence on the record regarding an enhanced award. Essentially this is an argument, based on *Powell* and *Bode*, that by not challenging petitioners' evidence, the government has waived its ability to challenge a conclusion that higher fees are warranted.

Petitioners misread those cases and impermissibly expand the limited waiver contemplated by either. For example, in *Bode* the court held that "because the United States did not controvert the expert's opinion on the unavailability of qualified counsel for this type of case, the United States . . . has waived *this factual issue* and cannot now contend that the taxpayers could have obtained qualified legal counsel for less." *Bode*, 919 F.2d at 1051 (emphasis added) (citing, *inter alia*, *Powell*, 891 F.2d at 1173).

Even if the Commissioner has waived the right to challenge a factual conclusion that there were a limited number of attorneys available in the local or national legal market, this does nothing to help petitioners with the fact that they have not established the first of their three suggested criteriaSSi.e., they have not shown the requisite "specialty" as that criteria is understood in *Perales* and *Powers*. Notwithstanding any shortage in the number of tax attorneys who also have specialized knowledge of Texas community property or insurance law, the necessity of engaging such attorneys can never be a "special factor," be-

---

[2] *Accord Kenlin Indus., Inc. v. United States*, 927 F.2d 782, 786 (4th Cir. 1991) (noting that § 7430 "must be strictly construed in favor of the Government").

cause the attorney's skills are not "nonlegal or technical abilities." *See Perales*, 950 F.2d at 1078; *Powers*, 43 F.3d at 183. Thus, in light of this circuit's consistently narrow interpretation of what can constitute a "specialty and limited availability" of qualified attorneys under the special factor analysis, and specifically in light of *Perales* and *Powers*, petitioners have failed to show entitlement to enhanced attorneys' fees.

### B.

In addition to their argument that their attorney was sufficiently specialized and unique to warrant a "special factor," petitioners assert that the Commissioner's "untenable" litigation positions unreasonably complicated and prolonged this litigation, causing petitioners significant legal expenses and hardship. As a result, petitioners urge us to adopt a new "special factor," not previously recognized by this court, that would allow for an increase in fees where the government's behavior was particularly egregious.

In support of this argument, petitioners urge us to "follow those courts that have indicated that a flagrantly improper litigation position may constitute a special factor under § 7430," and they rely most notably on *Jean v. Nelson*, 863 F.2d 759 (11th Cir. 1988), *aff'd on other grounds*, 496 U.S. 154 (1990).[3]

---

[3] Petitioners advance a number of additional cases that they suggest support recognition of such a special factor. For example, they cite *Baker v. Bowen*, 839 F.2d 1075 (5th Cir. 1988), which states, in *dictum*, that the government's delay in the payment of attorneys' fees may be a special factor within the meaning of the EAJA. *Baker*, however, involved a decision by the *district court* that such (continued...)

There, the court confronted the question whether the government's general posture in the litigation could be a special factor under the statute and under *Underwood*.

In analyzing *Underwood*, the *Jean* court opined that the Supreme Court "gives little guidance as to what can constitute a special

---

(...continued)
a special factor existed, and this court was unwilling to call such determination an abuse of discretion. Moreover, we recognized that "increases above [the $75] rate, although permissible, should be awarded sparingly and only after particularized and careful analysis of the individual facts of the case." *Id.* at 1082.

Two of the other cases cited by petitioners can also be distinguished in that they involved discretion to the district courts' determinations that special factors existed. *See Oklahoma Aerotronics, Inc. v. United States*, 943 F.2d 1344, 1350 (D.C. Cir. 1991); *Pollgreen v. Morris*, 911 F.2d 527, 537-38 (11th Cir. 1990). Another case, *In re Moulton*, 195 B.R. 954, 959 (Bankr. M.D. Fla. 1996), relies entirely on *Jean* for its conclusion that "inexcusable and egregious conduct" can constitute a special factor. Thus, only *Jean* engages in any analysis of the issue presented in this case, and it is enough for us to consider at length only that decision.

factor," and it concluded that, therefore, "the Court appears to have recognized that judicial construction of the 'special factor' term is likely to evolve with time." *Jean*, 863 F.2d at 776. The *Jean* court then remanded to allow the district court to "approach this question anew." *Id.* Before it did so, however, the court noted in a footnote that "if the Government in this case advanced litigation for any improper purpose such as harassment, unnecessary delay or increase in plaintiffs' expense, then consistent with [*Underwood*], its action warrants the imposition of a special factor." *Id.* at 776 n.13. It is on this footnote that petitioners base the bulk of their argument.

In response, the Commissioner argues first that "well-settled" principles of statutory construction counsel that the phrase "such as" is not a phrase of strict limitation, but is a phrase of general similitude indicating that there are includable other matters of the same kind that are not specifically enumerated by the standard. The Commissioner urges that in interpreting the "special factor" term found in § 7430(c)(1)(B)(iii), we should be mindful of the instructive language that followsSS"such as the limited availability of qualified attorneys for such proceeding"SSand the Commissioner concludes that awards of higher fees based on the IRS's litigation positions are not of the "same kind" or "general similitude" as are criteria that relate to the abilities of taxpayer's counsel.

Petitioners counter this first argument only by noting that the *ejusdem generis* canon asserted by the Commissioner is not always controlling or conclusive and that here we should look to the legislative history of the EAJA (because legislative history on the instant statute is sparse) to see that the Commissioner's use of this canon of construction is improper. According to the legislative history the petitioners cite, the award of attorneys' fees is intended "to reduce the deterrents and disparity [between Government and private-party resources] by entitling certain prevailing parties to recover attorney's fees," thereby creating an additional incentive for private parties to "defend[] against unreasonable Government action." *See* H.R. Rep. No. 96-1418, 96th Cong., 2d Sess. (1980), *reprinted in* 1980 U.S.C.C.A.N. 4726, 4974.

Assuming, *arguendo*, that we should use legislative history to inform our construction of the statute, the purposes the petitioners advance are in no way inconsistent with the Commissioner's interpretation. Nothing in the cited passages supports an award *in excess* of the $75 per hour statutory rate. Instead, the more plausible interpretation of the statute, in light of these underlying purposes, is that Congress intended the $75 rate to be sufficient to provide private parties with incentives to "defend against unreasonable Government action." Petitioners have done nothing to demonstrate why the IRS's "indefensible" litigation positions would increase the *hourly rate*, as opposed to a mere increase in *the number of hours* required to litigate the case.[4]

---

[4] While petitioners respond that the specific litigation positions taken by the Commissioner here required them to hire an attorney with specialities in tax law and Texas community property and insurance laws, such an argument is a thinly veiled attempt to relitigate the contention that we previously rejectedSSi.e., that petitioners' attorney was sufficiently specialized and of limited availability to qualify for a special factor. Moreover, petitioners' arguments are contradictory. It is likely that where the government's position is truly so contrary to well-

(continued...)

Seen in this light, then, the Commissioner's position is correct that imposition of a special factor in these circumstances essentially would amount to an impermissible award of punitive damages, contrary to the statute and to principles of sovereign immunity. Instructive is another court's rejection of a taxpayer's argument that the Commissioner's improper behavior in issuing a notice of deficiency should be considered a special factor:

We note, however, that the Commissioner's conduct has already been taken into account by the Tax Court's determination that his positions in the 1980 and 1982 Notices was [*sic*] "not substantially justified." The justification, or lack thereof, for the commissioner's position is a threshold question that must be first examined to determine whether a litigant even has a case for fees under § 7430. To also qualify this query as a "special factor" in the calculation of the amount of the fee award is inappropriate; otherwise a "special factors" analysis would amount to a vehicle for assessing punitive damagesSSa notion that receives no support in the structure or language of the statute.

*Cassuto v. Commissioner*, 936 F.2d 736, 744 (2d Cir. 1991).

Petitioners criticize this logic by urging that they do not advocate that "lack of substantial justification" should be a special factor, but, instead, that only in the limited circumstances where the government's position is also "untenable" or "unable to be defended" does the conduct qualify as a special factor. They also argue that the award of fees would be compensatory, not punitive, because it is based on actual fees incurred. Moreover, they assert that the award of increased fees is not punitive in nature, because it is not designed to punish and deter improper conduct, but, rather, is based on equitable principles that will encourage taxpayers to stand up for their rights in the face of egregious government action and improper conduct.

But once again, petitioners' argument supports the award only of *some* fees, and in this

---

(...continued)

established law (as suggested by petitioners here), the quality of lawyers needed to defend against such a position should be at least marginally lower. And at any rate, the government's alleged protraction and delay in this case only serve to increase the ultimate cost *it* will have to pay in the event of any award of fees.

8

case only of the statutorily allowed maximum of $75. As we have said, petitioners have not demonstrated why a higher *hourly* rate is necessary to combat the government's allegedly egregious conduct. While the calculation of damages would be compensatory in nature, the enhancement of fees above the statutory rate can be justified only under punitive damages principles.[5] And the Commissioner correctly points out that § 7430 in no way waives sovereign immunity for punitive damages.

Therefore, in light of the Commissioner's superior construction of § 7430 and of the punitive nature of the remedy suggested by petitioners, we conclude that the government's litigation position cannot be a "special factor" warranting an increase above the statutorily allowed $75 per hour. This is so regardless of how "untenable" that position might be. While this holding is in conflict with *Jean*, it is consistent with *Cassuto* and is correct as a matter of statutory interpretation and in light of the principle of sovereign immunity.

AFFIRMED.

---

[5] For these reasons, we decline petitioners' invitation to adopt the analysis employed in *Jean*. There, the court employed similarly-flawed reasoning that "improper purpose," "harassment, unnecessary delay, or increase in the plaintiffs' expense" should warrant imposition of a special factor and increased attorneys' fees, rather than merely justifying the award of statutorily-allowed attorneys' fees for all the additional time necessary to defend against the government's positions.